[No. 13835.  Department Two.  May 18, 1917.]

STEPHEN T. JACKMAN *et al.*, *Appellants*, WALLACE ACKLEY
*et al.*, *Plaintiffs*, v. WALTER T. GERMAIN *et al.*,
*Respondents.*[1]

ADVERSE POSSESSION—CLAIM OF RIGHT—LOST CORNER. Where a
boundary line was fixed by adverse possession under a claim of
right, it is immaterial whether the government corner was a lost
corner or not.

BOUNDARIES — ESTABLISHMENT — SURVEY. The survey of a dis-
puted boundary line by a deputy county surveyor does not estab-
lish the line as an official survey, under Rem. Code, § 3984, which
provides for the relocation of lost corners upon ten days' notice
to interested parties, where the provisions of the statute were not
followed and the parties in interest did not participate; since that
section does not purport to be for the establishment of lost cor-
ners or lines which are in dispute, the method of procedure in
such case being prescribed by § 947 *et seq.*

SAME — ESTABLISHMENT—AGREEMENT — EVIDENCE — SUFFICIENCY.
The burden of proving that a disputed boundary line was fixed by
agreement is not sustained where, by the agreement, the plaintiff
was to secure the consent of a tenant and there was no evidence
that such consent was obtained.

ESTOPPEL — PREJUDICE TO PARTY. Defendant's acquiescence for
two or three years in plaintiff's removal of a disputed boundary
line, until termination of a pending case to determine the true line,
does not estop the defendant from asserting title by adverse pos-
session, where the plaintiffs were not permitted to do anything to
their disadvantage after their removal of the fence.

ADVERSE POSSESSION—DISPUTED BOUNDARY—EVIDENCE—SUFFICIEN-
CY. Title by adverse possession to a disputed boundary is estab-
lished by evidence that defendant claimed to have set a stone at the
true corner in 1885, and in 1900 cleared the land up to that line, and
for more than ten years maintained a fence upon the line, openly
and notoriously in opposition to the wishes of the adjoining owner.

Appeal from a judgment of the superior court for What-
com county, Alston, J., entered June 6, 1916, upon findings
in favor of the defendants, in an action to quiet title, tried
to the court.  Affirmed.

[1]Reported in 165 Pac. 78.

*Bixby & Nightingale,* for appellants.
*Hurlbut & Neal,* for respondents.

MOUNT, J.—This action was brought to quiet title in the plaintiffs to a strip of land about 250 feet wide, alleged to belong to the plaintiffs as a part of the northwest quarter of section 13, township 40, range 2 east W. M., in Whatcom county. On a trial of the case, the court found that the defendants and their predecessors in interest had held the exclusive, open, and notorious possession of a part of the strip for a period of more than ten years, and for that reason quieted title to that part in the defendants, and to the balance of the strip in Ackley and wife. The plaintiff Jackman and wife have appealed from that part of the decree quieting title in the defendant Germain.

It appears from the record that Jackman and defendant Botta located in section 13 in about the year 1883. They were the first settlers in that locality. The Jackmans located on the northwest quarter of section 13, and Botta on the southwest quarter of that section. Soon after they located upon the land, they employed one Judson, who was then a surveyor, to point out the lines and show them the corners. The land, at that time, was uncleared. It was covered with brush and timber. The section was an irregular section. The lines as originally surveyed by the government surveyors could be traced by blazes upon trees. Mr. Judson was unable to find any of the corners of the section. He traced out the west line of the section to a point about midway between the northwest and southwest corners. He found what was supposed to be a bearing tree, which indicated the quarter corner post. According to the field notes, the quarter corner post was located a distance of 2.64 feet from this tree. After that time, this tree was destroyed, and Mr. Botta planted a stone at the point and claimed that this stone marked his northwest corner. This stone was afterwards known as the "Botta Stone." After the section corners

were found, Mr. Jackman insisted that the quarter corner stone set by Mr. Botta was not in the right place. Mr. Botta, however, maintained that it marked the corner.

In the winter of 1900 and 1901, Mr. Botta built a fence, beginning at what he claimed was his northeast corner, and running thence west a distance of about eighty rods. He cleared his land up to this fence, and later extended the fence westward to what is commonly known as the "Botta corner." In the year 1911, Mr. Lyle, a deputy county surveyor, was employed by some of the residents in the section to run out all the lines. Neither Mr. Botta nor his grantees took any part in this survey. Mr. Lyle ran the lines according to the government field notes, as he maintains, and located the quarter on the west line of the section 249.7 feet south of the stone set by Mr. Botta. The defendant Germain, at that time, had purchased Mr. Botta's interest in the southwest quarter, and some negotiations were had between the Jackmans and Mr. Germain as to the removal of the fence, which had been there since 1900. Mr. Jackman desired the fence moved south to the line run by Mr. Lyle. Mr. Jackman claims that Mr. Germain agreed that the fence might be moved. Mr. Germain testified that he did not agree that the fence might be moved. He testified, however, that he agreed that, if Mr. Jackman would move the fence at his own cost, and would satisfy a tenant of Mr. Germain's, he would consent to the removal of the fence. He also testified that the tenant would not consent, and that he did not consent to the removal of the fence. Mr. Jackman removed the fence and placed it upon the line determined by the Lyle survey. A year or two later, parties in section 14 brought an action to establish the quarter corner post on the section line between section 13 and 14. The parties to this action were not parties to that action. The action resulted in a judgment of the superior court of that county determining that the Botta stone was the correct location of the quarter corner. Thereafter Mr. Germain

tore down the fence on the Lyle survey and moved it back to where it originally was. This action was then begun to quiet title to the land in dispute. The trial court found as follows:

"That at all times between the latter part of 1900 and March, 1911, the said Botta and his grantees cultivated the east half of the land in dispute and were in the open, notorious and exclusive possession of same under claim that the same was a part of the land which had been granted by the United States Government to said John Botta."

And for that reason, concluded that the plaintiff Jackman was not entitled to the east half of the strip. The appellants made four contentions upon the brief, to the effect:

First, that the quarter corner on the west line of the section is a lost corner, and was legally established by the Lyle survey, and that the center line of that section was also established by that survey.

Second, that the Lyle survey was an official survey in substantial compliance with the provisions of Rem. Code, § 3984.

Third, that the Lyle boundary line was an agreed boundary between the parties.

Fourth, that the respondents were estopped to deny the title and right of possession in appellants, and that there was no adverse holding by the respondents.

We shall briefly notice these contentions. Upon the first contention, appellants argue that the quarter corner on the west line of the section is a lost corner. The respondents claim that the corner is not lost, but was established when the line was run by Mr. Judson in the year 1883. The respondents further contend that, even if the corner was a lost corner, it was established by a judgment of the court between other parties. We think the question whether this corner was a lost corner or not is of no importance in the case if, as a matter of fact, Mr. Botta and his successors in interest have maintained it as the true corner and have held adversely to

that line for a period of ten years or more. We shall notice that question later.

It is next argued by the appellants that the survey made by Mr. Lyle in the year 1911 is an official survey by the county engineer, under Rem. Code, § 3984, and establishes the lines and corners. That section of the code does not purport to be for the establishment of lost corners or lines where such corners or lines are in dispute. It simply provides that the owners of any section of land in this state, after having given ten days' notice to all persons interested, may employ a surveyor to establish and relocate or perpetuate lines and corners of a section of land, and it provides the method of payment by such persons. But it does not purport to provide that such surveys are binding between persons who do not take part therein where corners or lines are in dispute. Chapter VII of the code, beginning at § 947, provides the method of establishing lines, corners, and boundaries of lands where the parties cannot agree thereon. It is not claimed in this case that the provisions of that chapter were followed. In fact, they were not followed.

It is next argued that the boundary line between the adjoining lands of the appellants and respondents was established by agreement of the parties according to the Lyle survey. This was a disputed question of fact. The trial court, in commenting upon the evidence, made this statement:

"Shortly after the survey Jackman consulted Germain, the then owner of the Botta tract, about the removal of the fence from the Judson survey to the Lyle survey. They had certain negotiations in that connection which finally culminated in Germain agreeing that if Jackman would remove the fence to the Lyle survey at his own expense and satisfy Germain's tenant, who then had a lease for a term of years on the said southwest quarter, that it would be satisfactory to Germain. The fence was thereupon placed on the boundary between the northwest and southwest quarters as established by the Lyle survey."

But the court did not find that Mr. Jackman did satisfy the tenant of Mr. Germain at that time, or at all, and we find no evidence in the record to the effect that he satisfied the tenant. Mr. Germain testified that they did not reach an agreement, and that, when Mr. Jackman removed the fence upon the Lyle survey, it was without his knowledge or consent, and that he allowed it to remain there simply because a lawsuit was pending to determine the quarter corner post upon that section line, between other parties, and he awaited the result of that decision. After that decision was filed, he then tore down the fence, which he claims was wrongfully placed upon the Lyle survey by the appellants.

From a careful reading of the record, we are not disposed to hold that there was an agreement for the establishment of the boundary line. If there had been an agreement, then, under the authorities, that agreement would, no doubt, be good. *Rose v. Fletcher*, 83 Wash. 623, 145 Pac. 989, and cases there cited. But the burden was upon the appellants to establish that agreement, which, we think, has not been done.

The appellants argue next that the respondents were estopped to deny the title and right of possession in the appellants, because they acquiesced for two or three years after the appellants had moved the fence. We think there is no room for estoppel, because appellants were not permitted to do anything to their disadvantage after having moved the fence upon the land now in controversy. The dividing line was in dispute. The appellants were claiming the land, and the respondents were also claiming it. The appellants, without knowledge of the respondents, tore down the fence and rebuilt it upon what they claimed to be the line. There was then a case pending which would determine the true boundary line. The respondents waited until a decision of that case was rendered, and when that case was decided, it fixed the line at where respondents claimed it was. We think, under these facts, there is no room for estoppel.

Appellants lastly argue that there was no adverse possession and, for that reason, the court erred in finding adverse possession.   There is little or no dispute in the record that Mr. Botta, who owned the land at that time, maintained that the stone set by him about the year 1885 was at the true quarter corner.   In the year 1900, he built a fence and cleared the land up to that line, and for more than ten years maintained the fence upon that line.   He maintained the fence openly and notoriously in opposition to the wishes of the appellants.   His successors in interest afterwards claimed the land.   One party was claiming the line was at a given place. The other party was claiming that it was another place, so it is apparent that there was an adverse holding on the part of the respondents from the time the fence was erected in 1900 until after 1911.   This court has held that adverse possession for the statutory time, under a mistaken belief that a fence inclosing the land was on the true boundary line, with claim of ownership during such period, ripens into title by adverse possession.   *Wissinger v. Reed*, 69 Wash. 684, 125 Pac. 1030.

We are of the opinion that the trial court properly found that there was an adverse holding for a period of ten years.

The judgment is therefore affirmed.

Ellis, C. J., Fullerton, Parker, and Holcomb, JJ., concur.