FILED
COURT OF APPEALS
DIVISION II

2013 MAR 19 AM 8: 42

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| PACIFIC NORTHWEST HOLDINGS, LLC, a Washington limited liability company,<br><br>Respondent/Cross-Appellant,<br><br>v.<br><br>JERROLD B. IRWIN and GAIL IRWIN, husband and wife; JOHN D. IRWIN, a married man as his separate estate,<br><br>Appellants/Cross-Respondents,<br><br>CHARLES ICE and SHERYL ICE, husband and wife,<br><br>Defendants. | No. 42221-2-II<br><br><br><br><br><br>UNPUBLISHED OPINION |

HUNT, P.J. — John Irwin and Jerrold B. and Gail Irwin, husband and wife (collectively referred to as "the Irwins"),[1] appeal the trial court's (1) denial of their motion to vacate a default judgment against Charles and Sheryl Ice in Pacific Northwest Holdings, LLC's (PNH) lawsuit against the Irwins and the Ices for trespass damages and injunctive relief in connection with their use of areas outside their reserved easements after selling a tract of land to PNH; (2) construing a

---

[1] The notice of appeal reads, "The Defendants . . . appeal." Clerk's Papers (CP) at 163. In addition to the Irwins, the "defendants" at trial included Charles and Sheryl Ice. In this appeal the Irwins attempt to raise a lack of notice claim on the Ices' behalf; but the Ices raise no issues themselves.

reserved easement[2] as located along the eastern 16 feet of the tract; (3) award of trespass and delay damages to PNH based on the Irwins' continued use of their driveways and a roadway located outside their easements as determined by the trial court ("court-designated easements"); and (4) findings of fact and conclusions of law holding the Irwins financially responsible for relocating their driveways and the existing roadway to conform to these court-designated easements. The Irwins argue that they were entitled to notice of PNH's motion for default judgment against the Ices, that PNH did not provide alternative access to their homes, that there was no evidence of PNH's having suffered specific damage as a result of the Irwins' trespass outside their court-designated easements, and that there was no evidence that the Irwins proximately caused an unreasonable delay in PNH's development of its property.

PNH cross-appeals the trial court's findings and conclusions (1) allowing the Irwins to continue using the bridge over Clover Creek (despite the trial court's conclusion that the road approaching the bridge is located outside the north-running easement reserved and described in the deed conveying the property from the Irwins to PNH); and (2) allowing Jerrold Irwin to use additional PNH property to drive in and to back out of his garage, which he could not do within the confines of the reserved easement. PNH argues that whether this additional PNH property was necessary for Jerrold Irwin to access his garage was not an issue properly before the trial court because the Irwins did not ask for deed reformation and there was no other basis to alter the deed, despite Jerrold Irwin's request for this additional easement area at trial.

Assuming without deciding that the trial court's denial of the Ices' motion to vacate the default judgment is even properly before us, we affirm. We also affirm the trial court's

---

[2] "Reserved easement" refers to any easement that the deed reserved for the Irwins.

determination that the reserved south-north easement is located in the eastern 16 feet of the tract and its ruling that the Irwins must pay for relocating their easements, if they choose to relocate them. We reverse the trial court's rulings allowing the Irwins access to the Clover Creek bridge and creating additional easement rights for Jerrold Irwin to maintain his existing ingress to and egress from his garage.[3] We also reverse the trial court's damages award to PNH.

## FACTS

In 1976, John and Jerrold Irwin's parents conveyed a small parcel of a larger 30-acre tract to John[4]; the next year their parents conveyed a similar parcel to Jerrold.[5] The Irwin brothers built homes on their respective parcels. In 2003, the Irwin brothers and their sister, Cheryl Hunt, inherited the remainder of their parents' 30-acre tract as tenants in common. Their parents' home and the parcel on which it was situated bordered the south side of Clover Creek, which runs east-west across the tract; John Irwin and Hunt conveyed their parents' parcel to John Irwin's daughter and son-in-law, Charles and Sheryl Ice.

The only access to the Ices' parcel and to the Irwins' parcels is a roadway heading north, near the eastern property line of the larger tract. This roadway also runs north across a small bridge over Clover Creek and exits the tract through a trailer park to Brookdale county road to the north.

---

[3] In the interim, however, until PNH begins development of the property and installs the plat's interior streets, the parties represented at oral argument that the Irwins may continue using the existing roads for access to Jerrold Irwin's garage and access to the bridge across Clover Creek.

[4] We use first names for clarity where helpful; we intend no disrespect.

[5] The record before us on appeal does not include the quit claim deeds that conveyed these two parcels to their sons; thus, we cannot verify what easements across the larger tract, if any, the Irwins' parents provided to them when he conveyed these parcels.

## I. PARTITION ACTION

The tract became involved in a partition action. The court-appointed receiver, Steve Larson, recommended that the Irwins obtain a survey of the entire tract. The Irwins, however, did not follow Larson's recommendation. Without a survey, Larson drew a deed map, which depicted hand drawn crosshatched easements reserved for the Irwins and the Ices. The Irwins and Larson believed that (1) the reserved easement running south and north along the tract's eastern boundary was coextensive with the existing eastern roadway running south and north; and (2) this reserved easement included the small bridge over Clover Creek that connected to Brookdale county road to the north. The Irwins and Larson testified that the Irwins intended to retain this access along the eastern roadway running south and north, including the bridge across the creek.

In a January 2008 partition sale, PNH purchased the tract, exclusive of the Irwins' and the Ices' parcels. On the map referenced by and attached to the deed conveying the tract to PNH, Larson hand drew easement locations, purporting to reserve for the Irwins and the Ices "perpetual, non-exclusive easements sixteen (16) feet in width for ingress, egress and utilities."[6] Clerk's Papers (CP) at 155. Larson did not include in the deed, however, written legal descriptions of these reserved easements; instead, the deed stated simply that the reserved easements were "located as shown on the map." CP at 155.

---

[6] On this deed map, Larson marked the locations of several easements connecting the three Irwin/Ice homes to a commonly shared 16-foot-wide easement running south to north along the tract's eastern boundary, crossing the Clover Creek bridge, and connecting to Brookdale county road. The deed map also bears the handwritten word "bridge," with an arrow pointing to the apparent location where the bridge crosses Clover Creek. Ex. 1 at 6.

After obtaining title, PNH hired Apex Engineering to draft the first plat development proposal for the tract. This first development proposal would have given Jerrold Irwin an additional small parcel on the north side of his existing parcel to provide access from his garage to the development's planned internal street network. This first development proposal did not, however, include the one of the reserved easements that Larson had drawn on the deed map, the west-east easement that connected Jerrold's parcel to the eastern south-north easement.[7] But Jerrold Irwin was apparently satisfied that PNH's anticipated grant of an additional small parcel adjacent to his garage would provide adequate access to his property; thus, he did not object on this ground.

Nevertheless, the Irwins and the Ices objected to this first development proposal because it eliminated their shared reserved easement across the Clover Creek bridge, which provided access to Brookdale county road to the north. Instead of the reserved easement that Larson had depicted on the deed map, this first PNH development proposal confined the Irwins' and the Ices' parcels' ingress and egress to an entrance on the east side of the tract, which would eventually connect to a neighboring subdivision to the east when PNH's subdivision was completed. When the Irwins objected, PNH withdrew this proposed first plat.

At PNH's request, Apex surveyed the tract and discovered that the true eastern boundary was approximately 10 to 15 feet farther east than the Irwins believed it to be.[8] Using this true eastern boundary, PNH produced a second plat development design, which (1) placed

---

[7] This reserved easement ran along the south edge of Jerrold Irwin's parcel to the Irwins' jointly shared south-north easement to the east.

the Irwins' (and Ices') actual easement running south to north to Brookdale County Road, roughly 10 to 15 feet east of the existing south-to-north eastern roadway; (2) effectively eliminated the Irwins' use of the existing roadway and the bridge over Clover Creek; (3) eliminated the additional parcel adjacent to Jerrold Irwin's garage for access that the first plat proposal had included; and (4) instead, limited Jerrold Irwin's access to the crosshatched area Larson had hand drawn on the deed map, running from the south edge of his parcel to the shared south-north easement contiguous with the tract's eastern boundary.

The Irwins again objected. Jerrold Irwin complained that by limiting him to the reserved easement designated on the deed map, he would have no access to his garage.

## II. LAWSUIT FOR TRESPASS/DELAY DAMAGES AND INJUNCTIVE RELIEF

PNH sued the Irwins and the Ices for trespass damages and injunctive relief; PNH also sought declaratory relief establishing the location of the Irwins' easements. PNH claimed that the Irwins and the Ices were currently traveling on a roadway and driveways outside their legal easements. PNH asked the trial court to rule (1) that the Irwins' and the Ices' reserved easements in their deed map were vague and unenforceable; or (2) in the alternative, that their reserved easements should be restricted to the areas Larson had drawn on the deed map attached to the deed that had conveyed the tract to PNH.

### A. Partial Summary Judgment against Irwins; Default against Ices

PNH moved for summary judgment. Because the Ices had failed to answer its complaint, PNH obtained a default judgment against them, enjoining the Ices from using any part of the

---

[8] We estimate this distance based on the photographs admitted at trial, which depict Jerrold Irwin holding a measuring tape 16 feet out from various points along the eastern property line. *See* VRP (Apr. 18, 2011) at 168-72; Ex. 17, 18, 20, 21.

property that PNH had purchased outside the areas that the Ices had expressly reserved in the deed conveying the tract to PNH.

The trial court granted partial summary judgment to PNH, (1) determining that the easement connecting Jerrold Irwin's parcel to the shared eastern easement (running south to north to Brookdale county road) ran along the south edge of his parcel in a straight line east to the tract's eastern boundary; and (2) enjoining the Irwins and the Ices from using their existing driveways connecting their homes to the eastern easement because these driveways were located at least partially outside the reserved easements that Larson had hand drawn on the deed map. The trial court did not resolve on summary judgment, however, the location of the reserved eastern easement running north to Brookdale county road. Nor did it award damages. Instead, the trial court reserved these issues for trial.

The day before trial began, the Irwins' counsel appeared on behalf of the Ices and moved under CR 60(b) to vacate the default judgment against the Ices. The Irwins asserted that they were entitled to, but had not received, notice of the Ices' default, despite PNH's having moved for default against only the Ices. The trial court denied this motion.

## B. Bench Trial

Following a bench trial, the trial court found that the eastern 16-foot easement was contiguous with the true eastern boundary of the tract. But the trial court granted a deviation from this easement ("court-designated easement") to provide the Irwins "reasonable approaches to the bridge" over Clover Creek, located roughly 15 feet west of the court-designated easement. CP at 151 (Conclusion of Law (CL) 13. The trial court also found that PNH and Jerrold Irwin intended that PNH have a right to relocate the shorter west-east easement connecting the south

7

edge of Jerrold Irwin's parcel to the shared south-north eastern easement by rerouting this shorter easement through the plat's yet-to-be-constructed internal street network (so long as PNH provided sufficient vehicle maneuvering space for Jerrold Irwin to back out of his garage, to turn, and to drive forward out his driveway).

In addition, the trial court (1) enjoined the Irwins from using the existing eastern roadway running south to north to Brookdale County Road, to the extent that this roadway lay outside the easternmost 16 feet of the tract, where the trial court determined the reserved south-north easement was located; (2) placed on the Irwins the cost of constructing a new roadway and new driveways within the court's designated easement areas; and (3) awarded PNH $20,000 in trespass and delay damages based on its finding that the Irwins had trespassed over areas located outside their reserved easements.

## C. Appeal

The Irwins appeal the trial court's (1) denial of the Ices' motion to vacate the default judgment PNH obtained against the Ices; (2) determination that the eastern easement (running south to north, exiting on Brookdale County Road) is located in the easternmost 16 feet of the tract, along its eastern boundary; (3) determination that the Irwins are financially responsible for relocating their driveways to the trial court's designated easement areas and for relocating within the 16-foot court-designated easement area the eastern roadway running north to Brookdale; and (4) award of trespass/delay damages to PNH. PNH cross-appeals the trial court's allowing the Irwins to use the bridge over Clover Creek (outside the court-designated eastern easement) and allowing Jerrold Irwin to use additional PNH land adjacent to his garage so that he may drive his car in and back out.

## ANALYSIS

### I. DEFAULT JUDGMENT

The Irwins argue that the trial court erred by refusing to grant the Ices' motion to vacate the default judgment because PNH failed to serve notice on the Irwins.[9] The Irwins contend that (1) because they were named co-parties in the amended complaint, PNH was required to give them notice of PNH's motion for default against the Ices; and (2) because PNH did not provide notice to them (Irwins), the trial court erred in denying the Ices' motion to set aside the default judgment. These arguments fail.

We review for abuse of discretion a trial court's denial of a motion to vacate a default judgment. *Morin v. Burris*, 160 Wn.2d 745, 753, 161 P.3d 956 (2007). A trial court abuses its discretion when its decision is based on untenable grounds or reasons; a decision is untenable if it rests on an erroneous application of law. *State v. Rafay*, 167 Wn.2d 644, 655, 222 P.3d 86 (2009); *Morin*, 160 Wn.2d at 753. Because Washington law disfavors default judgments, we are more likely to find an abuse of discretion and to reverse a trial court's decision refusing to vacate a default judgment than one that sets aside a default judgment. *White v. Holm*, 73 Wn.2d 348, 351-52, 438 P.2d 581 (1968); *Showalter v. Wild Oats*, 124 Wn. App. 506, 511, 101 P.3d 867 (2004). But such is not the case here.

The Irwins cite CR 55(a)(3) for the proposition that every "party who has appeared in the action," including those not being defaulted, are entitled to notice of a motion for entry of default brought against any other party to the dispute and that this clause necessarily includes them. We disagree. CR 55(a)(3) provides:

---

[9] The Ices received proper notice.

Any party who has appeared in the action for any purpose shall be served with a written notice of motion for default and the supporting affidavit at least 5 days before the hearing on the motion. Any party who has not appeared before the motion for default and supporting affidavit are filed is not entitled to a notice of the motion.

In examining whether CR 55(a)(3) requires notice to *all* parties previously named in a proceeding, we begin with the rule's plain meaning: "If the meaning of a rule is plain and unambiguous on its face, then we are to give effect to that plain meaning." *Overlake Hosp. Ass'n v. Dep't of Health*, 170 Wn.2d 43, 52, 239 P.3d 1095 (2010). The plain language of CR 55(a)(3) is clear that "[a]ny party" means any party against whom a motion for default has been brought, not every party named in the complaint.[10] The Irwins fail to show that CR 55(a)(3) required PNH to provide them with notice of the hearing to enter a default judgment against the Ices. Therefore, we hold that the trial court did not abuse its discretion in denying the Ices' motion to vacate the default judgment.

## II. EASEMENT LOCATIONS AND ROAD RELOCATION COSTS

The Irwins next argue that the trial court erred in (1) finding that the eastern south-north easement was located along the easternmost 16 feet of the tract, precluding the Irwins from using the existing roadway immediately west of this 16-foot strip; and (2) making them financially responsible for relocating this eastern roadway and for relocating Jerrold Irwin's driveway to comport with the trial court's other designated easements leading to the Irwins' individual parcels. PNH counters that the trial court erred in granting the Irwins use of the roadway

---

[10] Other jurisdictions have reached similar conclusions when interpreting rules involving language similar to our CR 55(a)(3). *See, Edwards v. Van Voorhis*, 11 Ariz. App. 216, 220, 463 P.2d 111 (1970) ("'served upon opposing counsel'" includes only counsel of the party being defaulted) (citation omitted); *See also, Card v. Polito*, 55 A.D.2d 123, 125, 389 N.Y.S.2d 696 (1976) (limiting the term "any defendant" to only the party being defaulted).

10

approaches to and the bridge over Clover Creek. We hold that substantial evidence supports the trial court's finding that the south-north easement was located along the eastern boundary of the tract, that PNH acted reasonably in relying on the deed and attached map to reflect that easement location, and that the trial court did not err in allocating to the Irwins the eventual costs of relocating their eastern roadway, as well as their individual driveways, to comport with each of their court-designated easements, if they choose to do so.

Nevertheless, we note PNH's representation at oral argument that the Irwins may continue to use the existing roadway and driveways until such time as PNH provides alternative access to the Irwins through the plat's internal streets. Thus, (1) the Irwins will not incur roadway and driveway connection relocation costs immediately, and (2) Jerrold Irwin may avoid incurring any driveway relocation costs if he and PNH are able to connect his driveway directly to the plat's internal streets. But if Jerrold Irwin chooses to connect his driveway to the plat's internal streets in a manner that is at variance with PNH's eventual development plat, he will bear the costs of reconfiguring his driveway, as the trial court ordered.[11]

## A. Standard of Review

We consider unchallenged findings to be verities on appeal. *In re Marriage of Brewer*, 137 Wn.2d 756, 766, 976 P.2d 102 (1999). We review challenged findings of fact for substantial evidence; substantial evidence is "a sufficient quantity of evidence in the record to persuade a

---

[11] The plat's final internal street design was not known or made part of the record on appeal. Instead, the record contains several early proposed plats involving different possible connections between Jerrold Irwin's parcel and the plat's internal streets. We note that the Irwins objected to an early plat design that would have connected Jerrold's driveway directly to an internal plat street and that a later plat design showed his parcel abutting an internal plat street on the other side of his parcel, away from his driveway.

fair-minded, rational person of the truth of the finding." *State v. Hill*, 123 Wn.2d 641, 644, 870 P.2d 313 (1994). Conclusions of law must flow from the findings of fact. *Ruse v. Dep't of Labor & Indus.*, 138 Wn.2d 1, 5, 977 P.2d 570 (1999). We review questions and conclusions of law de novo. *Sunnyside Valley Irrigation Dist. v. Dickie*, 149 Wn.2d 873, 880, 73 P.3d 369 (2003).

We determine the intent of the original parties to an easement from the deed as a whole. *Zobrist v. Culp*, 95 Wn.2d 556, 560, 627 P.2d 1308 (1981). And we construe any ambiguities in the deed against the grantor. *Harris v. Ski Park Farms, Inc.*, 120 Wn.2d 727, 745, 844 P.2d 1006 (1993). Here, the Irwins were the grantors; and Larson prepared the deed map on their behalf.

### B. Easement Locations; Bridge; Garage Access

Jerrold Irwin testified that he believed the roadway running south-north across the bridge was located within the eastern 16 feet of the tract. Larson testified that his handwritten markings on the deed map were to serve as approximate locations of the Irwins' reserved easements; the deed itself, however, did not contain this information. And neither the Irwins nor Larson presented evidence that either of them had communicated to PNH before the partition sale their understanding or intent about the exact location of their reserved easements. Furthermore, Larson had advised the Irwins to obtain a survey so the exact boundaries of the tract and any reserved easements could be understood and legally described. But they had ignored this counsel and, thus, assumed the risk that when they conveyed the tract to PNH, the deed and Larson's attached hand-annotated deed map did not accurately represent their reserved easements' intended or existing locations.

### 1. Eastern south-north easement

Among the uncontroverted findings, the trial court found that the south-north easement was clearly diagrammed on the deed map, that its eastern edge was drawn contiguous with the eastern boundary of the tract, and that its western edge extended 16 feet west from the tract's eastern boundary. Based on these unchallenged findings, we hold that the trial court reasonably concluded that the easement depicted and reserved on the deed map was not ambiguous.[12] Accordingly, we hold that substantial evidence supports the trial court's finding that the south-north easement is located in the eastern 16 feet of the tract, with the easement's eastern edge contiguous with the tract's eventually surveyed eastern boundary.

### 2. Bridge

The trial court also concluded, "[T]he intents [of the parties] were clear and the [Irwins] should be allowed continued use of the bridge," roughly 10 feet west of the eastern south-north easement.[13] CP at 151 (CL 12). But the record is devoid of evidence that the Irwins or Larson communicated to PNH before the partition sale any intent to continue using the bridge after PNH assumed ownership of the tract.[14] Thus, the trial court's conclusion about the parties' intents for

---

[12] We note, however, that the trial court also concluded, "The location of the bridge, as opposed to the easement, as marked on the map is somewhat ambiguous." CP at 151 (CL 12).

[13] Exhibit 17 shows Jerrold Irwin standing with a 16-foot measuring tape next to the bridge. The Irwins offered this photograph to illustrate that the bridge is within 16 feet of the fence to the east, which fence the Irwins believed to be contiguous with the tract's eastern property line. The survey, however, shows that the fence is actually 16 feet west of the tract's eastern property line.

[14] Larson's ambiguous handwritten circle, arrow, and the word "bridge" on the deed map were not accompanied by the word "easement." Ex. 1.

continued use of the bridge does not flow from its findings of fact; nor does the record support the trial court's permitting the Irwins access to and over the bridge after selling the tract to PNH.

As we have previously noted, however, PNH informally noted at oral argument that the Irwins may continue to use the existing roadway access to and over the bridge until PNH provides alternative internal access to the Irwins (not necessarily over the bridge) when PNH develops its subdivision plat.[15]

### 3. Garage access

In its cross-appeal, PNH challenges the trial court's order allowing Jerrold Irwin to use part of the tract sold to PNH, located adjacent to his garage, to allow him to drive his car into the garage and to back out of his parcel, even though the Irwins had not reserved this area as an easement. Br. of Resp't at 5, 9, 12, 17, 20. PNH argues that the trial court erred in concluding:

> [T]he **intent of all parties was** that [PNH] could *relocate the easement* to Jerrold Irwin's home by using the internal plat [streets], provided **that Jerrold Irwin may back out, turn and drive forward down his driveway to the plat roads**.

Resp'ts' Supp. Br. at 14 (second emphasis added) (quoting CP at 152 (CL 19)). PNH asserts that there is no evidence of such intent in the record.[16] We agree.[17]

---

[15] *See* n.3.

[16] As we have already noted, the parties represented at oral argument their mutual intent to allow the Irwins to continue using the current access to their houses via their existing driveways and roadway on an interim basis, until such time as PNH provides access to the Irwins' parcels along its internal plat streets.

[17] The Irwins counter that there was evidence of the parties' intent to allow Jerrold Irwin continued access to his garage, even after PNH constructs its subdivision: They rely primarily on PNH's first plat proposal, which depicted access from Jerrold Irwin's garage at the north edge of his parcel to an internal street proposed for PNH's plat. But the Irwins objected to this first plat proposal, and PNH withdrew it.

As PNH asserts and we have previously noted, nothing in the record supports the trial court's findings and conclusions conditioning PNH's right to reroute the Irwins' access through the plat's internal streets on PNH's providing Jerrold Irwin with additional tract area outside his parcel, adjacent to his garage.[18] Although this result may appear harsh, we reiterate that (1) despite Jerrold Irwin's garage and driveway's location on the north edge of his parcel, he joined with his siblings in conveying the tract to PNH without ensuring that he retained a legally

---

PNH's next proposal depicted access to the plat's internal streets from the south side of Jerrold Irwin's parcel, *not* adjacent to his garage and driveway on the parcel's north side. Thus, PNH's later proposed internal street locations do not support the Irwins' assertion that the parties intended to allow Jerrold Irwin continued access to his garage from the north side of his parcel. On the contrary, PNH's later proposed plat shows that, even if the parties had at one time intended Jerrold Irwin to access internal plat streets from his garage and driveway, the Irwins rejected this potentially intended plan when they objected to PNH's first plat proposal.

[18] The Irwins argue that the trial court did not err in providing additional tract area for Jerrold Irwin to access his garage. They assert that the trial court's actions were proper because PNH had "invoked the equitable jurisdiction of the court by filing a complaint asking for declaratory relief 'determining the area of defendants' easement', and asking the court for 'any other and further relief the court deems just and equitable.'" Appellants' Supp. Br. at 8 (quoting CP at 3). The Irwins point to Jerrold Irwin's trial testimony that it was impossible for him to exit his garage and to turn around without additional adjacent area outside his parcel. This testimony conflicted somewhat with his earlier statement, "I can physically drive into my garage but I can't back out and go back out onto the existing driveway that they, [PNH, have] dedicated for me." VRP (Apr. 18, 2011) at 176.

The Irwins cite *Martinez v. Kitsap Pub. Servs., Inc.*, 94 Wn. App. 935, 943, 974 P.2d 1261 (1999), for the proposition that we have authority to look at the parties' subsequent acts and conduct regarding the location of easements. Although *Martinez* did not involve easements (it involved contract interpretation and the parol evidence rule), we have held that parol evidence may be used to explain an ambiguity in an instrument creating an easement. *Green v. Lupo*, 32 Wn. App. 318, 321, 647 P.2d 51 (1982). Here, however, the parties' subsequent actions do not support the Irwins' assertion that the parties intended to allow Jerrold Irwin additional easement area to access to his garage. Again, the following evidence in the record shows that the parties did *not* agree to such continued access: (1) the Irwins' objection to PNH's first plat proposal, which would have provided Jerrold Irwin with continued access to his garage via an adjacent internal plat street abutting the north side of his parcel; and (2) PNH's proposal of a new design in response (which no longer provided such northern access to the parcel but instead, substituted southern access).

cognizable easement for his garage and driveway access; and (2) the Irwins exacerbated the easement/roadway conflict before us now (a) by ignoring their court-appointed receiver's advice to obtain a survey of their property before selling the tract to PNH and (b) by relying instead on a hand-drawn map attached to the deed with no legal descriptions of the easements they likely intended to reserve.

The Irwins thereby assumed both (1) the risk of discrepancies between the court-designated easements and their existing roadway and driveways, and (2) the risk of incurring costs to mitigate these discrepancies. *CPL (Delaware) LLC v. Conley*, 110 Wn. App. 786, 791, 40 P.3d 679 (2002) (citing *Bennett v. Shinoda Floral, Inc.*, 108 Wn.2d 386, 396, 739 P.2d 648 (1987)). Thus, we reverse that portion of the trial court's order requiring PNH to allocate additional PNH land to Jerrold Irwin to provide continued ingress and egress from his garage similar to the access he enjoyed before conveying the tract to PNH.

## C. Roadway and Driveway Relocation Costs

The Irwins next argue that the trial court erred in making them financially responsible for relocating their driveways and the roadway within their court-designated easement areas.[19] They contend that PNH should be required to compensate them for any "right to relocate" the easements that the trial court granted. Br. of Appellants at 18. These arguments also fail.

---

[19] The Irwins do not challenge, however, the trial court's allocation of relocation costs for the area surrounding the bridge, where the trial court allowed the Irwins to take "reasonable approaches." CP at 152.

The Irwins' reliance on *Crisp v. VanLaecken*, 130 Wn. App. 320, 122 P.3d 926 (2005)[20] to shift relocation costs to PNH is misplaced. As grantors conveying the tract to PNH, the Irwins assumed the risk that they were mistaken about the true property lines and reserved easement locations with respect to their existing driveways and roadway when Larson hand drew cross-hatched markings to depict the reserved easements on the deed map with no accompanying legal description and no survey. *Harris*, 120 Wn.2d at 745. Therefore, (1) any "relocation" of driveways and roadway necessitated by the trial court's designation of the reserved easements depicted on the Irwins' deed map is the Irwins' responsibility;[21] and (2) the Irwins must bear any relocation costs.[22]

---

[20] The Irwins cite *Crisp* for the proposition that the holder of a servient estate "'must purchase the right to relocate [an] easement if he is to have it at all.'" *Crisp*, 130 Wn. App. at 325 (quoting *MacMeekin v. Low Income Housing Institute, Inc.*, 111 Wn. App. 188, 205-06, 45 P.3d 570 (2002)). The Irwins present no other authority to support their contention that they should not bear the cost of relocating the roadway and their driveways to conform to their court-established easements. We recognize that (1) PNH has not yet constructed an internal street network, into which these easements may be incorporated by the parties' agreement; and (2) PNH's most recent proposed plat in the record before us on appeal does not depict plans to do so. Thus, the question of whether the Irwins are entitled to compensation for PNH's relocation of some of their designated easements to the internal streets in some future proposed plat requires speculation; and this question is not ripe for review. *State v. McKee*, 141 Wn. App. 22, 36-37, 167 P.3d 575 (2007), *review denied*, 163 Wn.2d 1049 (2008) (if a claim is speculative and hypothetical, it is not ripe for judicial resolution).

[21] At oral argument, the parties noted that relocating the roadway to the eastern south-north easement may be problematic because it contains wetlands.

[22] Jerrold Irwin admitted that he had ignored Larson's advice to obtain a survey. VRP (Apr. 18, 2011) at 193. "[A] party bears the risk of a mistake if 'he is aware, at the time the contract is made, that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient.'" *CPL (Delaware)*, 110 Wn. App. at 791 (internal quotation marks omitted) (quoting *Bennett*, 108 Wn.2d at 396).

We hold that the trial court's easement relocation for access to Jerrold Irwin's garage and driveway and its grant of an additional easement to the Irwins permitting use of the Clover Creek bridge are not supported by substantial evidence and, therefore, must be reversed. We otherwise affirm the trial court's allocation of the roadway and driveway relocation costs, if any, to the Irwins.

### III. DAMAGES

The Irwins also argue that there is no evidence to support the trial court's award of damages for their trespass over PNH's property. We agree.

We may not overturn a fact-finder's damages award unless substantial evidence does not support it, it shocks the conscience, or it resulted from passion or prejudice. *Mason v. Mortgage Am., Inc.*, 114 Wn.2d 842, 850, 792 P.2d 142 (1990). Substantial evidence exists when there is a sufficient quantity of evidence to persuade a fair-minded, rational person that a finding is true. *In re Estate of Jones*, 152 Wn.2d 1, 8, 93 P.3d 147 (2004). Such substantial evidence is lacking here.

The trial court attributed its damages award to PNH's delay in developing the plat, which delay it attributed to the Irwins. But PNH's amended complaint sought damages only for trespass, not for delay.[23] Furthermore, consistent with PNH's complaint's focus on trespass, the parties did not present argument to the trial court about whether the Irwins were liable to PNH for damages caused by delay, or even whether the Irwin's trespass was the cause of the development's delay; nor have the parties briefed this issue on appeal. We hold, therefore, that

---

[23] In PNH's prayer for relief, paragraph 6.4 states, "Grant Plaintiff's judgment against Defendants for damages for Defendants' trespass." CP at 25.

the record does not support the trial court's award of damages for delay and we vacate that award to PNH.

We next address whether the record supports damages against the Irwins on PNH's trespass claim. Jerrold Irwin admitted at trial that he has continued to use his old driveway, despite the trial court's summary judgment order enjoining him from doing so; this continued use is technically a trespass. Nevertheless, as we have already noted, the parties agreed at oral argument that this continued use is acceptable to PNH until such time as PNH provides alternate access to Jerrold Irwin's parcel after developing the plat's internal streets. Therefore, we turn our attention to the more relevant issue of damages.

There is no evidence in the record before us on appeal suggesting that PNH's inability to obtain preliminary plat approval was linked to the Irwins' trespass. Nor is there substantial evidence to support the trial court's finding that "[t]he Irwins, in refusing to vacate the areas outside of their retained easements, delayed [PNH's] development for one half year." CP at 148 (FF 36). Rather, testimony about the delay in PNH's obtaining plat approval[24] suggests this delay was attributable to the negotiations and disputes about easement locations, not to the Irwins' interim use of the existing driveways and roadway. And there is no other evidence that arguably supports the trial court's award of damages to PNH for the Irwins' trespass. Therefore, we reverse and vacate the trial court's award for damages attributable to the Irwins' trespass.

---

[24] Dr. Walter F Foto, PNH's managing partner, testified that the dispute between the parties about the easements' locations significantly delayed development of PNH's plat. Royallade Omolade, PNH property manager, testified that until the disputed easements were located, PNH's plat proposal could not be approved. Although these testimonies arguably supported damages for delay, they did not support damages for trespass.

19

CONCLUSION

We affirm the trial court's designation of the reserved easement locations, its denial of the Irwins' motion to vacate the default judgment against the Ices, and its allocation to the Irwins the costs of relocating their driveways and the south-north roadway to conform to the court-designated easements, if they choose to relocate. We reverse the trial court's damages award to PNH and its order requiring PNH to grant additional easement rights to Jerrold Irwin's home so he "may back out, turn and drive forward down his driveway to the plat roads."[25] CP at 152 (CL 19).

In so holding, however, we acknowledge the parties' representations at oral argument that PNH will allow the Irwins (1) continued use of Jerrold Irwin's driveway and its connection to the existing roadway, or alternate access, until such time as the plat's internal street network provides alternative access to his parcel;[26] and (2) continued use of and access to the bridge[27] until such use interferes with PNH's development of the subdivision. After PNH installs the

---

[25] Until PNH develops its plat and installs its internal streets for alternate access, the Irwins may continue using the existing roadway and driveways for access to Jerrold Irwin's garage and access to the bridge across Clover Creek, to the extent that such continued use does not affect PNH's ability to develop its plat.

[26] Again, we note that if PNH provides access to Jerrold Irwin's parcel along an internal plat street that does not abut his driveway on the north edge of his parcel, he will bear the cost and burden of relocating his driveway to conform to the court-designated easement based on the easement that he reserved in Larson's hand drawn deed map, to the extent that he so chooses.

[27] We note that access to and across the Clover Creek bridge, along with portions of the roadway as it presently exists, lies outside the Irwins' court-designated easements. Thus, the Irwins' continued permissive use of these areas until PNH installs its internal plat streets is only temporary.

plat's internal streets, however, PNH may confine the Irwins' access to their court-designated easements unless otherwise expressly agreed by the parties.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Hunt, P.J.

We concur:

Van Deren, J.

Bridgewater, J.P.T.

21