[No. 11368. Department One. January 22, 1915.]

JOSEPH J. ROSE, *Respondent*, v. LAURA FLETCHER *et al.*, *Appellants.*[1]

BOUNDARIES — AGREED BOUNDARY LINES — ESTOPPEL. Where adjoining landowners hired a surveyor to establish the line between them and accepted the survey, each building one-half of the line fence, and farmed their lands and made conveyances with reference to the fence as the true boundary for a period of twenty years, they are estopped to question the line upon its being found by a new survey that the first survey was erroneous.

Appeal from a judgment of the superior court for Columbia county, Miller, J., entered December 31, 1912, upon findings in favor of the plaintiff, in an action to quiet title. Affirmed.

*Roy R. Cahill* and *A. F. Appleton*, for appellants.
*R. M. Sturdevant* and *Hardy E. Hamm*, for respondent.

CHADWICK, J.—This action is brought to quiet title to a strip of land lying along the boundary line between the farms of the plaintiff and the defendants. The disputed tract is shown by the plat which we have had prepared.

[1]Reported in 145 Pac. 989.

WEST

EAST

The land on the east was originally owned by the Fletchers, and that on the west was originally owned by Rose and his then wife, now divorced. In the year 1892, Rose purchased the lands owned by Fletcher, and shortly thereafter he removed the fence which had theretofore divided the two holdings, and cultivated the two tracts as one farm. The land had been cultivated by the respective owners up to the line fence and the furrows had distinctly marked a fence row upon the ground. In 1899, Rose and his then wife made a settlement of their property rights. Mrs. Rose took all of the west half of this land, describing it by political subdivisions. Rose took all of the east half describing it in a like way. In 1901, Mrs. Rose sold and conveyed all of the west half of the original tract to Fletcher. Shortly thereafter, 1902, Rose and Fletcher agreed to rebuild the fence on the old line. A fence was accordingly constructed jointly by Rose and Fletcher and the owners cultivated their land with reference thereto for about nine years, when defendant Frank Fletcher had a surveyor run the dividing line. He found it to be 364 inches out of the way at the north and about 130 inches at the south, the disputed tract measuring 1.46 acres. We have neglected to say that, in the year 1889, Rose and Fletcher had

employed a surveyor to locate the line between their respective holdings. Both parties were present and assisted in the survey and immediately thereafter built the first fence, each one building one-half thereof.

The court found that, at the time Rose conveyed to his former wife, they mutually agreed upon the line as marked by the fence row, and that when Rose conveyed to the Fletchers, the fence row as then located was accepted and recognized by both parties as the true line. It also appears by competent evidence that the fence as it now is, is on the exact line of the original fence. From all the facts, the court found that what is called in the record the first or Livengood survey defines the true boundary line, and so decreed. Defendants have appealed. They rely upon a rule stated in *Bowers v. Ledgerwood*, 25 Wash. 14, 64 Pac. 936, that if parties fix a boundary line under a mistaken belief that it is the true line with no intention to claim or relinquish anything beyond the true line, they are not bound by the mistaken line although marked by a fence, but must conform to the correct boundary when it is ascertained. *Kincaid v. Dormey*, 47 Mo. 337; *Jacobs v. Moseley*, 91 Mo. 457, 4 S. W. 135.

The case does not fall within that rule for clearly the owners of the lands involved for more than twenty years acted upon the boundary as originally surveyed. They farmed their land and made conveyances with reference thereto. If, in such cases, boundaries that have been defined in good faith and acted upon and improvements made with reference thereto are to give way whenever another surveyor comes along and fixes a different line, there would be no security in surveys at all. Although surveying is theoretically an exact science, it is well known that there is often a great difference in the work of surveyors when laid out on the ground, this because of inaccurate readings or the negligence or incompetence of many engineers. We had occasion to note this fact in the case of *Turner v. Creech*, 58 Wash. 439, 108 Pac. 1084. The logic of appellants' position is that the survey

relied on by them is the true survey because it is the last in
time.    Obviously no such conclusion follows; but, if it did,
they are in no better position.    This case falls within the doc-
trine of agreed boundaries.    The rule announced in *Turner
v. Creech, supra,* and *Windsor v. Sarsfield,* 66 Wash. 576, 119
Pac. 1112, seems to us to be controlling.    The doctrine of
these cases is amply sustained by the authorities, the per-
suasive principle being stated in *Jackson v. Van Corlaer,* 11
Johns. (N. Y.) 123:

"After they [the parties] have deliberately settled a boun-
dary line between them, it would give too much encourage-
ment to the spirit of litigation, to look beyond such settle-
ment, and break up the lines so established."

See, also, *Payne v. McBride,* 96 Ark. 168, 131 S. W. 463,
Ann. Cas. 1912 B. 661; *Jones v. Pashby,* 67 Mich. 459, 35
N. W. 152, 11 Am. St. 589; *Loustalot v. McKeel,* 157 Cal.
634, 108 Pac. 707; *Blair v. Smith,* 16 Mo. 273; *Smith v.
Hamilton,* 20 Mich. 433, 4 Am. Rep. 398.

In the *Jones* case, it is said:

"Where parties by mutual agreement, and for that express
purpose, meet and fix a boundary line, and thereafter ac-
quiesce in the line so established between them, such line will
be considered the true line between them, notwithstanding
the period of such acquiescence falls short of the time fixed
by the statute of limitations for gaining title by adverse
possession."

In the *Loustalot* case, upon a somewhat similar state of
facts, the court held that, when adjoining owners entered into
an agreement fixing a dividing line, and both had knowledge
of all the facts and no deception or fraud was practiced by
either, that,

"It is entirely immaterial whether the parties were right or
wrong in believing that the true line was exactly where it
should be as they established it.    They were certainly in
doubt as to where it should run and adjusted the matter by
making a practical location of the line where they thought
it ought to be, and having acquiesced in it as so established

and having occupied their lands under the location for almost seven years, a longer period than prescribed by the statute of limitations to bar a right of entry—the line they established is conclusively determined to be the true divisional line. Courts have always looked with favor on the settlement of questions of this character by the parties in interest themselves, and when it appears that an agreement adjusting a disputed boundary line has been fairly and definitely made between them, and they have occupied their lands accordingly for a period longer than the statutory period of limitations, such agreement is conclusive, no matter whether they were mistaken or not in their belief that they were locating it along the true line. It is quite obvious that if the fact merely that the parties were mistaken as to where the true line lay could invalidate their agreement, there never could be any stability attached to such an agreement unless the line agreed on was in truth the exact line. The policy of the law, however, is to give stability to such an agreement as a method adopted in good faith by the parties themselves to settle the controversy, and because it is the most satisfactory way whereby a true boundary line may be determined, and tends to prevent litigation."

In the *Blair* case:

"We consider this case thus: two owners of contiguous lots or tracts of land, each having his deed for his lot or tract, agree with each other, 'we fix this mark on the earth's surface as the line called for in my deed—this mark as the line called for in your deed; here is the line between us. My land, mentioned in my deed, comes up to this mark, or this fence, or this wall, on this side, and your land comes to the same, on that side.' They use and possess and occupy their respective lots to this mark. Now, this use and occupancy, without disturbance, for a time long enough for men to show that they know the boundary between their lands, shall be considered binding and conclusive as to such boundary, as well as of such understanding or agreement between them. They shall not, after a lapse of years, longer or shorter, as the circumstances may tend to show their agreement or settlement, or the fixing of their common boundary, be permitted afterwards to dispute it. Such boundary, thus agreed upon, shall be considered the true one; and each one considered as

the owner of the land mentioned in his deed thus marked out to that boundary between them."

While, in the case at bar, it cannot be said that there was an open dispute, there was such uncertainty as to warrant the calling of a surveyor who fixed a line that was mutually satisfactory to the parties in interest; so that, in principle, there is no difference in the cases. An agreed boundary that has been good for twenty years ought, in the absence of some controlling equity, to be good forever.

We find no error. The judgment is affirmed.

CROW, ELLIS, and MAIN, JJ., concur.