[No. 6752-8-II.   Division Two.   November 30, 1984.]

MICHAEL J. PIOTROWSKI, ET AL, *Respondents,* v. RONALD L. PARKS, ET AL, *Appellants.*

*Curtis G. Johnson*, for appellants.

*Craig A. Ritchie*, for respondents.

PETRIE, J.—Defendant, Parks, appeals a judgment quieting title to a strip of land in plaintiff, Piotrowski. The essential issue is whether Parks and Piotrowski's predecessor in interest, Sawyer, effectively executed an oral agreement to establish the boundary between the parties' properties. We hold that Parks and Sawyer did so agree and effectively marked that boundary so as to preclude Piotrowski from successfully claiming ownership to the presently disputed strip. Accordingly, we reverse with direction to dismiss Piotrowski's complaint to quiet title.

It is undisputed that some time prior to 1973 Sawyer held record title to rural property in Clallam County described as the Northeast Quarter of the Southeast Quarter of the Northwest Quarter in Section 17, Township 30 North, Range 6 West of the Willamette Meridian. It is also undisputed that for some time prior to 1973 Parks was the contract vendee of the property directly west and immedi-

ately adjacent to Sawyer's property. In 1977 Sawyer sold his property to Russo, and in March 1979 Russo sold the north one–half of the property to Piotrowski. The property in dispute is a strip of land approximately 13 feet wide and approximately 300 feet long running north and south between the Piotrowski and Parks properties.

In 1973 Sawyer's property contained a stand of fir and alder trees. He decided to clear the land, but did not know exactly where the western boundary of his land lay. Neither did Parks. Sawyer knew his property was on a so–called "short" section of land and did not want to take timber off of Parks' property. However, both he and Parks knew of a north–south fence south of their properties which ran to the southwest corner of Sawyer's property and which (they believed) had been surveyed previously. They believed that they could come, in Sawyer's words, "awful close [to the true line] and save quite a bit of money, which, you know, we could agree mutually upon a line without paying some-one to hit it exactly within a few inches of where we could hit it." Accordingly, they orally agreed to, and thereafter recognized as their boundary, a line which they established by running a fence row due north of the guide fence parallel to and equidistant west of a north–south road on the east side of Sawyer's property. Having thus established the line, they erected a visible post and wire fence on that line, cleared the land from both sides up to the fence line, and split the cost between themselves.

The fence they erected lies approximately 13 feet east of a line calculated by a surveyor hired by Piotrowski in 1979 to be the legally described boundary of their properties. Piotrowski commenced this action less than 7 years after the fence was erected.

Piotrowski does not dispute the fact that Parks and Sawyer had some type of agreement and that the fence was built in 1973. In support of the trial court's judgment, he does contend, alternatively, (1) that the fence was not erected to establish the boundary; (2) that the fence was intended, but failed, to mark the true boundary; (3) that he

had no notice of the oral agreement; (4) that "nobody would take notice that it [the fence] was built to establish a boundary"; and (5) that an appropriate statute of limitations had not run against him before he commenced this action.

■ Before considering these several contentions, we first advert to the minimum requirements that adjoining property owners must meet in order to establish a common boundary—so as to bind themselves and their successors—by parol agreement. Previously, we set forth those minimum criteria as follows:

> (1) There must be either a bona fide dispute between two coterminous property owners as to where their common boundary lies upon the ground or else both parties must be uncertain as to the true location of such boundary; (2) the owners must arrive at an express meeting of the minds to permanently resolve the dispute or uncertainty by recognizing a definite and specific line as the true and unconditional location of the boundary; (3) they must in some fashion physically designate that permanent boundary determination on the ground; and (4) they must take possession of their property by such occupancy or improvements as would reasonably give constructive notice of the location of such boundary to their successors in interest; or (as an alternative to (4) above), (4a) bona fide purchasers for value must take with reference to such boundary.

*Johnston v. Monahan,* 2 Wn. App. 452, 457, 469 P.2d 930 (1970).

Piotrowski's first contention is that the fence was not built to establish the boundary. He bases that contention on testimony by Parks as to the use he and Sawyer made of their respective properties after the fence was built.

Q What use did you make of your land in that regard?
A The boundary line was for—I've got cows in there.
Q And how about Mr. Sawyer, as far as you could see, what use did he make of his property?
A Tom had some cows too.

That testimony, he asserts, proves that the fence was erected solely to separate the cattle and was not intended

to establish a boundary. We view that testimony (as did the trial court) to mean that after the fence was built the parties actually *used* their respective properties to the fence line. The overwhelming evidence is that both Parks and Sawyer intended to erect a fence which would form their common boundary. The trial court expressly found:

8. The evidence establishes that the disputed north–south boundary line was attempted to be located by Sawyer and that Sawyer's intent was *to locate the true boundary*.[1]

(Italics ours.)

Indeed, Piotrowski relies on that finding to support his next contention, *i.e.*, because "Sawyer's intent was to locate the true boundary" but he failed to locate that true boundary, the fence did not become the boundary.

Here, Piotrowski attempts to resurrect a much misunderstood principle of law which we take some pains to explain. He contends that if:

bordering landowners fix a boundary in the wrong location, intending to fix it in the correct location, they are not bound,

citing *Bowers v. Ledgerwood*, 25 Wash. 14, 64 P. 936 (1901) and *Rose v. Fletcher*, 83 Wash. 623, 145 P. 989 (1915). Plaintiff utterly misconstrues both cases.

*Bowers v. Ledgerwood, supra,* was an adverse possession case in which Bowers, the respondent, attempted to support a trial court's ruling by asserting precisely the contention now put forth by Piotrowski. The Supreme Court reversed the trial court and expressly rejected Bowers' contention by declaring:

[T]hough the fence may have been established originally by mistake, if it were followed by a claim to the land and

---

[1]Parks assigned error to that finding to the extent that it may indicate that Sawyer, unilaterally, attempted to locate the line. No evidence supports that interpretation. All the evidence is that both Sawyer and Parks agreed to and participated in the line location; and both parties assumed the risk of failure to locate the "true" boundary.

such acts as clearly evinced a determination of permanent proprietorship, the claim is established.

*Bowers,* 25 Wash. at 19.

In *Bowers,* the issue was the nature and extent, if any, of the disseisor's hostility. Any confusion in existing opinions as to that issue in Washington has now been completely and definitively dissipated by the recent, unanimous decision of *Chaplin v. Sanders,* 100 Wn.2d 853, 676 P.2d 431 (1984).

*Rose v. Fletcher* was an early case in Washington which recognized the theory of fixation of common boundaries by parol agreement. It is usually cited primarily for authority that the adjoining parties need not be engaged in "an open dispute" in order to fix their boundary by parol agreement; it is sufficient that there be "such uncertainty as to warrant the calling of a surveyor . . ." *Rose v. Fletcher,* 83 Wash. at 628. *See* Comment, *Boundary Disputes in Washington,* 23 Wash. L. Rev. 125, 127 (1948).

The court in *Rose v. Fletcher* stated the rule of law declared by *Bowers v. Ledgerwood, supra,* as follows:

[I]f parties fix a boundary line under a mistaken belief that it is the true line *with no intention to claim or relinquish anything beyond the true line,* they are not bound by the mistaken line although marked by a fence, but must conform to the correct boundary when it is ascertained.

(Italics ours.) *Rose v. Fletcher,* 83 Wash. at 625.

Here, as also in *Rose v. Fletcher,* the adjoining landowners did intend to claim and relinquish to the agreed boundary line; and they used their property, as noted above, to the fence line. For a more definitive denunciation of a partial statement of the "mistake" rule see Browder, *The Practical Location of Boundaries,* 56 Mich. L. Rev. 487, 498–504 (1958).

Next, Piotrowski contends that, as to him, the attempt to establish the fence as the boundary fails because he had no notice of the parol agreement between Parks and Sawyer. Indeed, the trial court expressly found that when Piotrow-

ski purchased from Russo he "had neither actual nor constructive notice of any oral agreement as to the location of the north–south boundary lines dividing the property . . . other than as described in the deed."

Professor Browder describes the nature of the binding effect of parol agreements upon successors in interest as follows:

> That a practical location will bind the parties thereto and their privies is the usual assumption, and the only ground indicated for relieving the privies is their qualification as bona fide purchasers for value without notice of the located line. Accordingly it has been held that they will be bound if they had knowledge of the line; and they will also be bound by constructive or inquiry notice, which can be furnished by possession conforming to the line, by monuments marking the line, or by improvements consistent with the line.

(Footnotes omitted.) 56 Mich. L. Rev. at 529.

At the heart of the matter is the concept of inquiry notice when the nature of the property and the boundary demarcation placed on the ground are reasonably susceptible of evoking inquiry as to the significance of the demarcation. In broad outline, we implied that concept in the third criterion set forth in *Johnston v. Monahan, supra.* Lest the language of that criterion be interpreted too broadly, we now restate it as follows:

> (3) they must in some fashion physically designate that permanent boundary on the ground by the erection of a structure capable of evoking inquiry as to its significance.

A fence 300 feet long, clearly visible and located 13 feet off a subsequently surveyed line, is such a structure. Having been placed on inquiry as to the significance of the fence, it was not necessary that Piotrowski be given notice of the *agreement*; it was the *location* and *nature* of the *fence* which supplied the notice to him.

We turn then to the issue of the running of a statute of limitations. Throughout the trial (and to a lesser extent on appeal also) Piotrowski commingles the concept of parol agreement with that of mutual recognition and acquie-

scence. Though there is a degree of overlap between the two concepts, they are separate and distinct theories of practical location. The essential difference lies in the manner of inaugurating the practical location. Under a theory of recognition and acquiescence, the line of demarcation is placed on the ground unilaterally by one of the adjoining parties, the other party merely acquiescing in that location as the boundary over a period sufficient to satisfy the statute of limitations. *Lamm v. McTighe,* 72 Wn.2d 587, 434 P.2d 565 (1967). In other words, recognition and acquiescence does not require an actual agreement. Rather, it requires that the parties demonstrate by their possessory actions their acquiescence to the unilaterally erected line as the boundary for a period of time which satisfies the appropriate statute of limitations. On the other hand, parol agreement does require an express agreement as to the location of the boundary from the beginning; it requires only possessory action concerning that line so as to place successor parties on inquiry notice that the fence (or other suitable structure) has been agreed upon as the boundary. We find no case in Washington which imposes a post–agreement requirement that the line agreed upon from the beginning as the boundary does not become such until the passage of a statutorily specified time. Indeed, noticeably lacking in *Johnston v. Monahan, supra,* is any such requirement in the criteria enumerated.

What, then, if anything, is the minimum post–agreement prerequisite to enforcement of the agreed line as the boundary? *Johnston v. Monahan, supra,* suggests that possession by occupancy or improvements which reasonably gives constructive notice of the location of the boundary is a sufficient post–agreement prerequisite. Restatement (Second) of Contracts § 128(1) (1981) declares:

> (1) A contract between owners of adjoining tracts of land fixing a dividing boundary is within the Statute of Frauds but if the location of the boundary was honestly disputed the contract becomes enforceable notwithstanding the Statute when the agreed boundary has been

marked or has been recognized in the subsequent use of the tracts.

Professor Browder describes the problem and the various solutions as follows:

> Most of the courts which recognize boundary agreements insist that certain circumstances must exist following an agreement before it can be regarded as binding, or determinative of the boundary. But the courts are not agreed on the nature of such circumstances, and they are vague about the reasons for requiring them. In several cases it is indicated, but not beyond doubt, that such an agreement is binding when made. A number of courts have held that such agreements are binding if "executed" by physical manifestations of the agreement on the ground. Execution will often take place by the erection of a fence, but other acts, including a change of possession, will suffice. A still larger body of authority requires that the agreement be followed by acquiescence in it or possession consistent with it for an undefined period of time which, however, may be less than the period of the statute of limitations for adverse possession. At the other end of the spectrum are the views of the Ohio and *possibly the Washington*[2] *courts* that a boundary agreement becomes binding only after acquiescence in it for the statutory period; or the position of the Wisconsin court, asserting a special sort of estoppel and requiring that valuable improvements be made in reliance on the agreement.

(Footnotes omitted. Italics ours.) 56 Mich. L. Rev. at 493–94.

We are inclined to accept the rule adopted by those

---

[2]Browder's surmise that Washington may follow Ohio's requirement that the agreement becomes binding only after acquiescence for a statutory period is based on his interpretation of *Egleski v. Strozyk,* 121 Wash. 398, 400, 209 P. 708 (1922). We do not view that case as supportive of Browder's tentative conclusion. *Egleski* was a true parol agreement case, and it does recite as a fact that Strozyk (one of the original parties to the boundary agreement) enjoyed "the continued, uninterrupted occupancy . . . of the strip of land now in controversy for a period of more than eighteen years", and that during that time he cleared and cultivated the strip. However, the court's conclusion—to deny title to the neighbor, Egleski—was based not only on the theory of parol agreement but also on adverse possession by Strozyk for the requisite time.

courts, "probably a majority, [which] seem to require no particular period." R. Cunningham, W. Stoebuck & D. Whitman, *Property* 766 (1984). *See* 6 G. Thompson, *Real Property* § 3035 (1962); 2 H. Tiffany, *Real Property* § 653 (1939). We hold, therefore, that an oral agreement between owners of adjoining tracts of land (1) permanently fixing a common boundary that (2) had been uncertain, becomes binding and enforceable upon the parties and their successors in interest after (3) they have in some fashion designated that boundary on the ground by erection of a structure capable of evoking inquiry as to its significance, and after (4) they have taken possession of their property by such occupancy or improvements as would reasonably give constructive notice of the location of such boundary to their successors in interest. The boundary agreed upon by Parks and Sawyer in 1973 meets all those criteria.

Judgment reversed with direction to dismiss Piotrowski's complaint.

WORSWICK, A.C.J., and HICKS, J. Pro Tem., concur.

Reconsideration denied December 31, 1984.

Review denied by Supreme Court April 17, 1985.