# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| JAMES V. KAVE and HOLLY M. KAVE, individually and the marital community thereof, | No. 48779-9-II |
| Appellants, | |
| v. | PART PUBLISHED OPINION |
| MCINTOSH RIDGE PRIMARY ROAD ASSOCIATION, a Washington State Corporation, | |
| Respondent. | |

MAXA, A.C.J. – This case involves the claims of McIntosh Ridge Primary Road Association (McIntosh) against James and Holly Kave for interfering with a trail easement and a community recreation easement on the Kaves' property that benefitted McIntosh. The Kaves appeal certain summary judgment rulings, the entry of a judgment against them following a jury trial, and the trial court's award of treble damages and reasonable attorney fees against them.

In the published portion of this opinion, we hold that the trial court erred in (1) quieting title to an easement covering the trail's existing location without regard to the easement's legal description; and (2) awarding McIntosh treble damages and attorney fees for interference with the easements under RCW 4.24.630, which imposes liability when a person "goes onto the land of another" and causes waste or damage, because the statute does not apply to the Kaves' actions

taken on their own property. In the unpublished portion of the opinion we reject the Kaves'

remaining liability claims, but hold that McIntosh is not entitled to reasonable attorney fees

under the Easements, Covenants and Restrictions (EC&Rs) applicable to McIntosh Ridge

properties.

Accordingly, we affirm in part, reverse in part, and remand for proceedings consistent

with this opinion.

FACTS

McIntosh Ridge is a community near Tenino that was created by the Weyerhaeuser Real

Estate Development Company. In 2000, Weyerhaeuser recorded EC&Rs that encumbered all

McIntosh Ridge properties. In 2004, the Kaves purchased two adjacent lots within the McIntosh

Ridge community – lots 12 and 18A. At the time of the Kaves' purchase there were two

recorded easements that burdened their property for the benefit of McIntosh – a trail easement

and a community recreation easement.

*Trail Easement*

In 2002, Weyerhaeuser filed an amendment to the EC&Rs that created the trail easement.

The amendment attached a document entitled "Legal Description." Clerk's Papers (CP) at 1782.

The document identified "[a] 10 foot wide easement . . . lying 5 feet on each side of the

centerline of the trail as built and located on the ground and generally described below," and

provided a detailed legal description of the easement's location. CP at 1782. The document then

stated that the easement was generally shown on an attached area map, which depicted the

easement's location on lots 12 and 18A. The area map referred to the easement as a "50' wide

trail easement," and stated that the purpose of the drawing was "to show the general location of the easement as a schematic representation." CP at 1783.

A trail already was in place on lots 12 and 18A when the Kaves purchased those lots in 2004. But a 2012 survey commissioned by McIntosh showed that the existing location of a portion of the trail on the Kaves' property did not conform to its legal description.

*Community Recreation Easement*

The community recreation easement was a circular easement with a 100 foot radius. The circle included a triangular area of land sitting between three roads. Most of the community recreation easement burdened the Kaves' lot 12.

Weyerhaeuser had placed numerous amenities in and around the community recreation easement before the Kaves purchased lot 12. These amenities included a picnic shelter, log benches, hitching posts, picnic tables, a log perimeter, a fire pit, a shed, and a flag pole.

McIntosh alleged that before September 2010, the Kaves demolished the log benches and log perimeter, removed picnic tables, knocked over the hitching posts, and damaged the picnic shelter. In October 2010, McIntosh had the community recreation easement surveyed. The survey showed that the picnic shelter was partially outside of the easement and on the Kaves' property. Shortly after the survey was completed, the Kaves removed the picnic shelter. And McIntosh alleged that the Kaves knocked over the flag pole and destroyed the fire pit, which were entirely within the community recreation easement.

*Kaves' Lawsuit Against McIntosh*

In 2012, McIntosh performed some work on the triangular piece of land within the community recreation easement – pulling up tree stumps, clearing vegetation, grading and

installing a ditch and culvert. The Kaves believed that there were wetlands in that area. An environmental consultant's report concluded that the recreational easement contained a wetland area and that McIntosh's activities had impermissibly disturbed this wetland.

In August 2013, the Kaves filed suit against McIntosh, alleging that McIntosh's activities had harmed wetlands within the easement and had violated federal and state statutes and various EC&R provisions. The Kaves sought an injunction requiring McIntosh to restore the wetland and also requested damages for timber trespass under RCW 64.12.030 and waste under RCW 4.24.630. The trial court dismissed all of the Kaves' claims before trial.

*McIntosh's Counterclaims Against the Kaves*

In response to the Kaves' complaint, McIntosh in September 2013 asserted several counterclaims. McIntosh sought an order quieting title to an implied easement over the Kaves' property for the areas McIntosh had used and improved outside of the express easements. In addition, McIntosh sought relief under RCW 4.24.630 for alleged waste and damage to the trail and community recreation easements. McIntosh also asserted causes of action for conversion, breach of the EC&Rs, nuisance, and unjust enrichment.

McIntosh moved for summary judgment to quiet title to the trail easement. The trial court granted the motion and stated that McIntosh "may use the trail in its current location and should take steps to document the current location of the trail to the extent the trail has shifted from its original and/or the legally described path." CP at 1916.

The Kaves filed a motion for reconsideration of the trial court's quiet title ruling. They supported their motion with the 2012 survey map showing that a portion of the trail easement on their property did not conform to its legal description. And in response, McIntosh submitted

portions of a deposition indicating that the trail may have shifted over the years. The trial court denied the Kaves' motion for reconsideration.

The Kaves also moved for summary judgment seeking dismissal of McIntosh's counterclaims, including the RCW 4.24.630 claim. But the Kaves did not argue that RCW 4.24.630 was inapplicable to them because their alleged interference with the easements occurred only on their own property. The trial court denied the Kaves' motion, stating that there were material issues of fact on the counterclaims.

*Verdict and Post-Judgment Awards*

The case proceeded to trial and the jury rendered a verdict through a special verdict form. On McIntosh's RCW 4.24.630 claim, the jury found that the Kaves (1) had wrongfully injured personal property or improvements to land where McIntosh had an easement and caused damages of $12,500, and (2) had caused waste or injury to land where McIntosh had an easement and caused damages of $1,000.

McIntosh filed a motion to treble these damages and for an award of reasonable attorney fees, both under RCW 4.24.630. The Kaves opposed the motion, arguing for the first time that RCW 4.24.630 was inapplicable because they did not go onto the land of another when interfering with the easements.

Based on RCW 4.24.630, the trial court trebled the $13,500 in damages related to damage to personal property in the easements and injury and waste to the easements. Regarding attorney fees, the court ruled that McIntosh was entitled to attorney fees under RCW 4.24.630 and made an express factual finding that McIntosh's multiple claims were largely intertwined. Therefore,

the court awarded McIntosh its attorney fees incurred in pursuing all its counterclaims, totaling $237,134.45.

The Kaves appeal the trial court's judgment.

ANALYSIS

A.    QUIETING TITLE TO THE TRAIL EASEMENT

The Kaves argue that the trial court did not have authority to quiet title to an easement at the trail's existing location.  McIntosh argues that the trial court did not relocate the easement, but simply confirmed that the trail could be left in its existing location.  We agree with the Kaves.

1.    Standard of Review

We review a trial court's order granting or denying summary judgment de novo.  *Lyons v. U.S. Bank Nat'l Ass'n*, 181 Wn.2d 775, 783, 336 P.3d 1142 (2014).  We view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor.  *Lakey v. Puget Sound Energy, Inc.*, 176 Wn.2d 909, 922, 296 P.3d 860 (2013).  Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  CR 56(c).

McIntosh argues that we should review equitable decisions made in the context of summary judgment for abuse of discretion.  The general standard of review for a trial court's exercise of equitable authority is abuse of discretion.  *Emerick v. Cardiac Study Ctr., Inc.*, 189 Wn. App. 711, 730, 357 P.3d 696 (2015), *review denied*, 185 Wn.2d 1004 (2016).  But the issue here is whether the trial court had *authority* to exercise its equitable powers to quiet title to the trail in its current location, not whether it properly exercised any authority it had.  Whether a trial

court has the authority to order equitable relief is a question of law that we review de novo. *Niemann v. Vaughn Cmty. Church*, 154 Wn.2d 365, 374, 113 P.3d 463 (2005).

    2.    Analysis

A trial court has authority to quiet title in the dominant owner to an easement based on the instrument creating the easement. *See Kirk v. Tomulty*, 66 Wn. App. 231, 240-41, 831 P.2d 792 (1992) (affirming the trial court's decree quieting title to an easement based on a metes and bounds description). Therefore, the trial court had authority here to quiet title in McIntosh to the easement described in the legal description attached to the second amendment to the EC&Rs.

But McIntosh did not request that the trial court quiet title to the legally described easement. During oral argument on McIntosh's summary judgment motion, the trial court asked McIntosh's counsel, "What exactly are you asking for with respect to the trail easements?" CP at 2108. Counsel replied:

> That *wherever the trails are right now*, if that's not where the legal easements are, that we do some sort of adjustment to say those are the trails, and we'll do a boundary line adjustment.

CP at 2108 (emphasis added). Counsel then confirmed that McIntosh was requesting to quiet title to the existing location. In its summary judgment order, the court granted what McIntosh requested: quiet title to the existing location of the trail, regardless of the easement's legal description.

In *MacMeekin v. Low Income Housing Institute, Inc.*, Division One of this court adhered to the traditional rule at common law that a trial court has no equitable authority to order relocation of an easement without the express consent of the owners of both the dominant and servient estates. 111 Wn. App. 188, 207, 45 P.3d 570 (2002). In *Crisp v. VanLaeken*, this court

agreed with *MacMeekin* and held that the owner of the servient estate could not relocate an easement without consent of the dominant estate owner. 130 Wn. App. 320, 324-26, 122 P.3d 926 (2005). Both cases rejected the minority rule adopted by the *Restatement (Third) of Property: Servitudes* § 4.8(3) (2000) that would allow a servient estate owner to relocate an easement without the dominant estate owner's consent. *MacMeekin*, 111 Wn. App. at 207; *Crisp*, 130 Wn. App. at 321.

Here, the trial court quieted title to the trail easement based on its existing location rather than based on the trail's legal description. To the extent that the trail's existing location was different than the legal description, this ruling constituted a relocation of the trail easement without the Kaves' consent. Under *MacMeekin* and *Crisp*, the trial court had no authority to order such a relocation.[1]

McIntosh argues that *MacMeekin* and *Crisp* are inapplicable because it did not request a relocation of the trail easement, only a confirmation that the easement was valid in its existing location. McIntosh focuses on the area map attached to the easement's location, which referenced a 50-foot-wide trail easement. McIntosh claims that the easement's legal description should be interpreted as requiring only that the easement be within this 50-foot corridor, not as limiting the easement to a specific 10-foot-wide path. According to McIntosh, the trial court did not relocate the easement, but just confirmed that it did not have to be moved.

---

[1] Both *MacMeekin* and *Crisp* involved the servient estate owner's attempt to relocate an easement. Here, McIntosh as the *dominant* estate owner was requesting relocation. But this distinction is immaterial. There is no indication in either case that the dominant estate owner has the right to relocate an easement without the servient estate owner's consent. Even the *Restatement* relocation rule applies only to the servient estate owner. *Restatement (Third) of Property: Servitudes* § 4.8(3).

McIntosh's argument might have merit if the area map provided the only description of the trail easement. However, the document entitled "Legal Description" unambiguously stated that the easement was 10 feet wide and then described in specific detail the exact location of the easement's centerline. The area map simply showed the "general location of the easement as a schematic representation." CP at 1783. The legal description's plain language is inconsistent with the argument that the easement could be located anywhere within a 50-foot corridor.

McIntosh also argues that a trial court has broad equitable authority to determine the location of an easement, citing *Piotrowski v. Parks*, 39 Wn. App. 37, 691 P.2d 591 (1984) and *Wilhelm v. Beyersdorf*, 100 Wn. App. 836, 999 P.2d 54 (2000). Neither case applies here.

In *Piotrowski*, the owners of adjoining properties orally agreed to establish a boundary line between the properties and erected a fence along that line. 39 Wn. App. at 38-39. The fence line tuned out to be 13 feet east of the actual boundary line, and a subsequent owner sought to quiet title to the 13 feet between the fence and the actual boundary. *Id.* The court held that the oral agreement satisfied the criteria required to fix the common boundary and that the fence put the subsequent owner on notice of the agreed new boundary. *Id.* at 46. McIntosh claims that *Piotrowski* applies by analogy because as with the property owners in that case, the Kaves were on notice that a trail existed on their property in the existing location. But unlike in *Piotrowski*, the Kaves never entered into an agreement fixing the location of the trail that differed from the legal description.

In *Wilhelm*, the owner of landlocked property obtained an easement across adjoining property for access, but the easement as drafted did not adequately fix its location. 100 Wn. App. at 839. The appellate court held that the trial court had equitable authority to reform the

easement instrument to reflect its actual use based on mutual mistake and a scrivener's error because the easement description failed to express the parties' clear intent. *Id.* at 843-45. McIntosh claims that *Wilhelm* establishes that if the existing location of the trail was inconsistent with the legal description, the trial court had equitable authority to fashion a remedy. But unlike in *Wilhelm*, the legal description here clearly and unambiguously described the location of the trail, and there was no mutual mistake or scrivener's error.

We hold that the trial court did not have authority to quiet title in McIntosh to an easement based on the existing location of the trail to the extent that the existing location differed from the easement's legal description. The record is unclear how the trail's existing location compared with the easement's legal description. Therefore, we remand this claim for further proceedings consistent with this opinion.

## B. APPLICABILITY OF RCW 4.24.630 TO EASEMENTS ON THE KAVES' PROPERTY

The Kaves argue that the trial court erred in denying their motion for summary judgment on McIntosh's counterclaim for RCW 4.24.630 liability and in awarding treble damages and reasonable attorney fees to McIntosh under RCW 4.24.630. They claim that RCW 4.24.630 cannot apply to actions that occurred on their own property. We decline to address this argument with regard to the trial court's summary judgment order and the jury's subsequent verdict because the Kaves did not raise this argument on summary judgment or at trial.

But the Kaves did assert this argument in opposition to posttrial motions on treble damages and attorney fees, and therefore we consider the argument in that context. We hold that RCW 4.24.630 does not apply to the Kaves' interference with easements on their own property,

10

and therefore that the trial court erred in awarding treble damages and reasonable attorney fees to McIntosh under RCW 4.24.630.

### 1. Judgment for Damages

We generally do not consider arguments raised for the first time on appeal. *See* RAP 2.5(a); *Karlberg v. Otten*, 167 Wn. App. 522, 531, 280 P.3d 1123 (2012). Specific to summary judgment, RAP 9.12 provides that the "appellate court will consider only evidence and issues called to the attention of the trial court." *See*, *e.g.*, *Vernon v. Aacres Allvest, LLC*, 183 Wn. App. 422, 436, 333 P.3d 534 (2014), *review denied*, 182 Wn.2d 1006 (2015) (declining to consider argument on appeal that was not made during summary judgment proceedings below). The purpose of this rule is to ensure that we engage in the same inquiry as the trial court. *Id.*

Here, the Kaves did not raise the argument that RCW 4.24.630 was inapplicable because their alleged activities occurred only on their property when arguing their summary judgment motion to dismiss McIntosh's RCW 4.24.630 claim. And they did not object on this basis when the trial court submitted the RCW 4.24.630 claim to the jury. The first time the Kaves raised this argument in their pleadings was in posttrial motions – opposing treble damages and attorney fees and moving for a new trial. Therefore, we decline to consider this argument with regard to the trial court's denial of the Kaves' summary judgment motion and the jury's verdict. We affirm the portion of the judgment relating to McIntosh's RCW 4.24.630 claims in the amount of $13,500.

### 2. Treble Damages and Attorney Fees

When opposing McIntosh's motion for treble damages and reasonable attorney fees, the Kaves did assert the argument that RCW 4.24.630 was inapplicable because their alleged

activities occurred only on their property. Therefore, we will consider the argument in that context.

> RCW 4.24.630(1), referred to as the waste statute, provides:
>
> *Every person who goes onto the land of another* and who removes timber, crops, minerals, or other similar valuable property from the land, or wrongfully causes waste or injury to the land, or wrongfully injures personal property or improvements to real estate on the land, is liable to the injured party for treble the amount of the damages caused by the removal, waste, or injury. . . . In addition, the person is liable for reimbursing the injured party for the party's reasonable costs, including but not limited to investigative costs and reasonable attorneys' fees and other litigation-related costs.

(Emphasis added.) This plain language imposes liability only on a person who "goes onto the land of another." RCW 4.24.630(1).

The issue here is the meaning of "land of another." The Kaves argue that RCW 4.24.630 does not apply to servient estate owners' interference with an easement located on their own property. McIntosh argues that because a dominant estate owner has a property interest in the easement, a servient estate owner like the Kaves can trespass on that easement and incur liability under RCW 4.24.630. We agree with the Kaves.

"An easement "is a nonpossessory right *to use* another's land in some way without compensation." *Maier v. Giske*, 154 Wn. App. 6, 15, 223 P.3d 1265 (2010) (emphasis added). Although the dominant estate has a right to use the servient estate, the land remains the property of the servient estate. *See Crisp*, 130 Wn. App. at 323 (defining an easement as "a right, distinct from ownership, to use in some way the land of another, without compensation") (internal quotation marks omitted). Therefore, an easement cannot be considered the "land" of the dominant estate owner.

Here, McIntosh's counterclaim against the Kaves under RCW 4.24.630 was premised only on the Kaves' alleged interference with the trail easement and the community recreation easement. Both easements are on the Kaves' property, and there was no allegation that any of the Kaves' actions giving rise to their liability took place outside their property. Based on the plain language of RCW 4.24.630, the Kaves did not enter into the "land of another" even if they did interfere with the easements.

*Colwell v. Etzell*, 119 Wn. App. 432, 439, 81 P.3d 895 (2003), supports the finding that RCW 4.24.630 does not apply when a servient estate owner interferes with an easement on his or her property. In that case, the Colwells were the beneficiaries of a road easement on Etzell's property. *Id.* at 435. The Colwells filed suit against Etzell under RCW 4.24.630 after he performed construction work on the road that allegedly interfered with the Colwells' use of the road. *Id.* at 435-36. The trial court found that Etzell violated RCW 4.24.630 by intentionally interfering with the Colwells' easement. *Id.* at 435, 437.

The appellate court reversed, holding that Etzell did not violate RCW 4.24.630. *Id.* at 435, 441-42. In quoting RCW 4.24.630, the court highlighted the phrase "who goes onto the land of another." *Id.* at 437. The court then expressly rejected the trial court's determination that RCW 4.24.630 liability turned not on entry upon the land of another, but on the invasion of a *right* in land. *Id.* at 438-39. Instead, the court stated, "The statute's premise is that the defendant physically trespasses on the plaintiff's land. There was no physical trespass in the present case." *Id.* at 439. The court concluded that "RCW 4.24.630 is premised upon a wrongful invasion or physical trespass *upon another's property*, a commission of intentional and unreasonable acts

13

*upon another's property*, and subsequent destruction of physical or personal property by the invader to *another's property*." *Id.* at 441 (emphasis added).

The court in *Colwell* addressed and distinguished *Standing Rock Homeowners Ass'n v. Misich*, 106 Wn. App. 231, 23 P.3d 520 (2001). In *Standing Rock*, the defendant – a dominant estate owner of a road easement – destroyed gates that had been placed on someone else's property that interfered with use of the easement. *Id.* at 235-37. The court affirmed liability under RCW 4.24.630. *Id.* at 246-247. As the court in *Colwell* noted, in *Standing Rock* the defendant wrongfully invaded and trespassed on another's property to destroy the gates. *Colwell*, 119 Wn. App. at 438-39.[2]

We hold that RCW 4.24.630 does not apply to a servient estate owner's interference with an easement on his or her own property. Therefore, we reverse the trial court's award of treble damages and reasonable attorney fees to McIntosh under RCW 4.24.630.

CONCLUSION

We reverse the trial court's grant of summary judgment to McIntosh quieting title to the trail easement to the extent that the actual trail does not conform to its legal description. We affirm the jury's damages verdict on McIntosh's RCW 4.24.630 claims, but reverse the trial court's award of treble damages and reasonable attorney fees under RCW 4.24.630. We address the remaining issues in the unpublished part of this opinion. Accordingly, we affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

---

[2] McIntosh argues that because *Standing Rock* held that a dominant estate owner can be liable under RCW 4.24.630 for damaging property within an easement, it "logically follows" that a servient estate owner also can be liable under RCW 4.24.630 for damaging an easement. But this argument ignores that a dominant estate owner necessarily must go onto the land of another to damage an easement, while a servient estate owner need not.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

ADDITIONAL FACTS

*Motion in Limine*

The Kaves filed suit against McIntosh, alleging that McIntosh's modifications within the community recreation easement harmed wetlands within the easement and violated federal and state statutes and various EC&R provisions. The trial court dismissed most of the Kaves' claims against McIntosh on summary judgment. The only issue that survived summary judgment was a portion of the Kaves' waste claim under RCW 4.24.630, limited to $522 of alleged timber removed from the wetland portion of the community recreation easement. The trial court also stated that potential liability for consulting and attorney fees remained.

Before trial, McIntosh filed a motion in limine seeking to prevent the Kaves from submitting evidence of waste and damages related to the Kaves' wetlands-related claims that had been dismissed on summary judgment. In the context of this motion, the trial court ruled that the Kaves could not seek any attorney fees, expert fees, costs or other related expenses that they incurred in pursuing their own claims. The trial court also granted the motion in limine.

*Jury Instructions*

The trial court's jury instructions included instructions on liability for nuisance and under RCW 4.24.630. The Kaves did not object to these instructions. The Kaves also did not propose jury instructions stating the presumption that proper forestry practices are not a nuisance or stating that RCW 4.24.630 was inapplicable to activity taking place on the defendant's own land.

The Kaves did not propose a statute of limitations instruction. However, the Kaves requested that the instruction describing McIntosh's counterclaims against the Kaves for damaging and removing improvements to the community recreation easement and causing waste and injury to the trail easement be modified to state that McIntosh had to prove that the alleged acts occurred after September 2010, three years before McIntosh filed its counterclaims. The Kaves apparently believed that the statute of limitations precluded recovery for any activities before that date. The trial court declined to include a date in the instruction. However, the court stated that it intended to include a general instruction on statute of limitations that had been proposed by McIntosh.

But McIntosh later asked that the general statute of limitations instruction be removed. McIntosh was concerned that the three year reference would cause confusion in relation to claims under the EC&Rs, which were subject to a six year statute of limitations. After noting that the Kaves never proposed an instruction on the subject, the court removed the statute of limitations instruction.

*Jury Verdict and Post-Judgment Motions*

The jury rendered a verdict on McIntosh's other claims in addition to the RCW 4.24.630 claim. The jury found that the Kaves (1) committed conversion and caused damages of $1,000, (2) committed nuisance and caused damages of $9,500. The jury also found that the Kaves breached the EC&Rs, but was not asked to find damages on that claim. The jury did not find in favor of McIntosh on its unjust enrichment and implied easement claims.

In addition to requesting an award of reasonable attorney fees under RCW 4.24.630, McIntosh also requested attorney fees under section 8.10 of the EC&Rs. The Kaves did not

expressly argue that McIntosh was not entitled to recover attorney fees under section 8.10.[3] The trial court ruled that the jury's finding that the Kaves breached the EC&Rs also gave rise to an award of attorney fees under the EC&Rs, although it noted that an award on that basis would be superfluous in light of the award of attorney fees under RCW 4.24.630. The court stated that its attorney fees analysis applied equally to the EC&Rs.[4]

The Kaves filed a motion for a new trial on various grounds. The Kaves argued that RCW 4.24.630 was inapplicable to interference with an easement that was on their land. Also for the first time, the Kaves argued that the verdict on nuisance was contrary to law because properly conducted forest practices are presumed to not be a nuisance under RCW 7.48.305. The trial court denied the Kaves' motion for a new trial.

ADDITIONAL ANALYSIS

A.    EXCLUSION OF THE KAVES' DAMAGES EVIDENCE

The Kaves argue that the trial court erred in granting McIntosh's motion in limine preventing the Kaves from presenting evidence regarding wetland consultant fees they incurred. We disagree.

We review a trial court's decision to grant a motion in limine for an abuse of discretion. *Gunn v. Riely*, 185 Wn. App. 517, 531, 344 P.3d 1225, *review denied*, 183 Wn.2d 1004 (2015).

---

[3] The Kaves did argue that McIntosh was not entitled to attorney fees on its nuisance claim under section 6.7 of the EC&Rs, which addresses the abatement of nuisances.

[4] McIntosh also requested reasonable attorney fees incurred in defending against the Kaves' unsuccessful claims under the EC&Rs, RCW 4.24.630, and other grounds. The trial court granted McIntosh's motion and awarded attorney fees incurred in defending against the Kaves' unsuccessful claims. The Kaves do not appeal the award of attorney fees to McIntosh in defending against the Kaves' claims.

A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds. *Terrell v. Hamilton*, 190 Wn. App. 489, 499, 358 P.3d 453 (2015).

The Kaves argue that the trial court erred in excluding evidence regarding their wetland consultant fees because they could recover those fees under RCW 4.24.630. But the trial court initially dismissed on summary judgment their RCW 4.24.630 claims except for $522 for removed timber. And in the context of the motion in limine, the court then dismissed that claim as well. The Kaves did not appeal these dismissals. Therefore, any evidence regarding their consultant fees was irrelevant to the remaining issues at trial and was properly excluded.

We hold that the trial court did not abuse its discretion in excluding evidence of the Kaves' costs related to their own RCW 4.24.630 claims, which had been dismissed.

B.     STATUTE OF LIMITATIONS INSTRUCTION

The Kaves argue that the trial court erred by not giving an instruction about the statute of limitations for McIntosh's counterclaims.[5] We disagree.

We review the trial court's decision whether to give a particular jury instruction for an abuse of discretion. *Terrell*, 190 Wn. App. at 498. A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds. *Id.* at 499. A jury instruction is sufficient if it properly informs the jury of the applicable law, allows each party to argue their theory of the case, and is supported by substantial evidence. *Fergen v. Sestero*, 182 Wn.2d 794, 803, 346 P.3d 708 (2015).

---

[5] The Kaves also suggest that the trial court erred in denying its motion filed at the close of McIntosh's evidence under CR 41(c) and CR 50 to dismiss McIntosh's claims that were outside the statute of limitations. However, the Kaves do not make any argument in support of this suggestion. Therefore, we do not consider the issue. *See* RAP 10.3(a)(6); *e.g. Joy v. Dep't of Labor & Indus.*, 170 Wn. App. 614, 629, 285 P.3d 187 (2012).

Here, the trial court declined to include the statute of limitations instruction because it could cause prejudice to McIntosh by implying that their claims under the EC&Rs for the Kaves' wrongful conduct were also subject to a three year statute of limitations. As a result, the instruction potentially would be confusing to the jury. The trial court also noted that the Kaves had failed to propose a better instruction despite being instructed by the trial court to do so.

The trial court expressed clear reasons for declining to give the statute of limitations instruction. And the Kaves fail to cite any authority indicating that the trial court was required to give such an instruction. Accordingly, we hold that the trial court did not abuse its discretion in declining to give a statute of limitations instruction.

C.       NUISANCE AND RCW 4.24.630 INSTRUCTIONS

The Kaves argue that the trial court erred by failing to instruct the jury that properly conducted forest practices are presumed to not be a nuisance and that RCW 4.24.630 is inapplicable to actions taken by a person on his or her own land. We hold that the Kaves failed to preserve these arguments because they did not request those instructions at trial or object to the trial court's instructions.

A party has a duty to propose an appropriate instruction, and if the trial court fails to give the proposed instruction the party must take exception to that failure. *Goehle v. Fred Hutchinson Cancer Research Ctr.*, 100 Wn. App. 609, 614, 1 P.3d 579 (2000). "If a party does not propose an appropriate instruction, it cannot complain about the court's failure to give it." *Goodman v. Boeing Co.*, 75 Wn. App. 60, 75, 877 P.2d 703 (1994), *aff'd*, 127 Wn.2d 401, 899 P.2d 1265 (1995). And a party that fails to object to a jury instruction waives the ability to challenge that

instruction on appeal. RAP 2.5(a); *Hudson v. United Parcel Serv., Inc.*, 163 Wn. App. 254, 269, 258 P.3d 87 (2011).

Here, the Kaves did not propose an instruction about forest practices as a defense to nuisance liability or RCW 4.24.630's inapplicability to easements on their property. In addition, they did not object to the nuisance instructions or the RCW 4.24.630 instruction on those grounds. Accordingly, we hold that the Kaves failed to preserve their ability to challenge the jury instructions on nuisance and RCW 4.24.630 on appeal.

D.     CUMULATIVE ERROR

The Kaves argue that a new trial is warranted because cumulative error denied them a fair trial. We disagree.

The Kaves do not provide any authority that a cumulative error doctrine applies in a civil case. They cite *Storey v. Storey*, 21 Wn. App. 370, 374, 585 P.2d 183 (1978), for the proposition that cumulative error can justify a remand for a new trial. However, the court in *Storey* reviewed the trial court's specific decision to grant a CR 59 motion for a new trial. 21 Wn. App. at 373-74. Therefore, *Storey* does not stand for the proposition that we can remand for a new trial on the basis of cumulative error.

Even if the cumulative error doctrine applies in civil cases, the Kaves fail to show that they were denied a fair trial. They argue that errors allowed for a "snowball misapplication of RCW 4.24.630." Br. of Appellant at 46-47. But as discussed above, they failed to challenge the application of RCW 4.24.630 before trial or at trial. We hold that there was no cumulative error requiring a new trial.

20

E.     RECOVERY OF ATTORNEY FEES UNDER THE EC&RS

The Kaves argue that McIntosh is not entitled to recover reasonable attorney fees under the EC&Rs for prosecuting its counterclaims because section 8.10 of the EC&Rs allows fees only when lot owners, not McIntosh, file suit.[6]  We agree.

1.     Failure to Raise Issue in Trial Court

McIntosh's only argument is that the Kaves did not argue in the trial court that McIntosh could not recover reasonable attorney fees under the language of the EC&Rs.[7]  As noted above, we generally do not consider arguments raised for the first time on appeal.  *See* RAP 2.5(a); *Karlberg*, 167 Wn. App. at 531.

However, the Kaves did oppose McIntosh's motion for an award of attorney fees.  And although the Kaves did not rely on section 8.10 of the EC&Rs, they did refer to section 6.7. Finally, the trial court did not actually award attorney fees under the EC&Rs because it already had awarded attorney fees under RCW 4.24.630.  Under these circumstances, we exercise our discretion to consider the Kaves' argument on appeal.

---

[6] The Kaves also challenge the amount of attorney fees the trial court awarded.  Because we hold that McIntosh is not entitled to attorney fees under either RCW 4.24.630 or the EC&Rs, we do not address this argument.

[7] McIntosh also argues that the Kaves actively represented to the trial court that McIntosh could recover attorney fees under the EC&Rs, and judicial estoppel prevents the Kaves from taking the opposite position in this appeal.  However, the record shows only that the Kaves indicated they would seek attorney fees if they prevailed on McIntosh's EC&R claims, not that McIntosh would be entitled to attorney fees if it prevailed on its EC&R claims.

2. Analysis

A court may award reasonable attorney fees only when such an award is authorized by contract, statute, or recognized ground of equity. *Union Bank, NA v. Blanchard*, 194 Wn. App. 340, 364, 378 P.3d 191 (2016). Section 8.10 of the EC&Rs states:

> If the Board of Directors of the Association, or their successors or assigns shall violate or attempt to violate any of the easements, covenants or restrictions herein, it shall be lawful for any other person or persons owning a Lot to prosecute any proceedings at law or in equity against the Association to prevent it from so doing or *to recover* damages and costs for such violation, including, without limitation, *reasonable attorneys' fees*.

CP at 761 (emphasis added).

The plain language of section 8.10 only allows an award of attorney fees to a lot owner who successfully sues McIntosh. That section clearly does not allow McIntosh to recover attorney fees for prosecuting proceedings against a lot owner.

McIntosh suggests that it is entitled to reciprocal attorney fees under RCW 4.84.330. That statute requires that any contracts containing unilateral attorney fee provisions must be applied bilaterally. *See Kaintz v. PLG, Inc.*, 147 Wn. App. 782, 786-87, 197 P.3d 710 (2008). The EC&Rs between McIntosh and lot owners was a contract. *See Wilkinson v. Chiwawa Cmtys. Ass'n*, 180 Wn.2d 241, 249-50, 327 P.3d 614 (2014) (treating covenants as a contract). But RCW 4.84.330 would only authorize McIntosh to recover attorney fees for *defending against the Kaves' claims* for violation of the EC&Rs, not to prosecute its own claims.

We hold that the trial court erred in ruling that McIntosh was entitled to recover attorney fees under the EC&Rs.

No. 48779-9-II

F.    ATTORNEY FEES ON APPEAL

The Kaves request that we award them their reasonable attorney fees on appeal under RCW 4.24.630. RCW 4.24.630 provides that a person liable under the statute must pay attorney fees to the injured person. But RCW 4.24.630 does not allow a person who successfully *defends* a claim under the statute to recover attorney fees. Accordingly, we do not award attorney fees to the Kaves on appeal.

McIntosh requests attorney fees on appeal under RCW 4.24.630 and the EC&Rs. However, we hold above that McIntosh is not entitled to recover attorney fees under either RCW 4.24.630 or the EC&Rs. Accordingly, we do not award McIntosh attorney fees on appeal.

CONCLUSION

We affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

_____
MAXA, A.C.J.

We concur:

_____
WORSWICK, J.

_____
SUTTON, J.

23