IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| KEVIN B. HENDRICKSON and JANE DOE HENDRICKSON, husband and wife and the marital community composed thereof; and JOHN AND JANE DOES NOS. 1-10, | ) ) ) ) ) | No. 77526-0-I<br><br>DIVISION ONE<br><br>PUBLISHED OPINION |
| Appellants, | ) ) ) ) | |
| v. | ) ) | |
| ERIK J. MURPHY, | ) ) | |
| Respondent. | ) ) ) | FILED: March 25, 2019 |

ANDRUS, J. — Kevin Hendrickson appeals the trial court's order terminating an easement that crossed, but dead-ended within the boundaries of, property owned by Erik Murphy. Because the easement serves no beneficial use to Hendrickson, we affirm.

## FACTS

Erik Murphy owns property at 11431 North Dogwood Lane, Woodway, Washington (hereinafter the Murphy Property). Kevin Hendrickson and his wife[1] own nearby property at 11411 North Dogwood Lane (hereinafter the Hendrickson Property). Both properties originated from the Priscilla Collins Short Plat, established in 1978 and comprised of four lots: Lot 1, Lot 2, Lot 3, and Lot 4.

---

[1] Although "Jane Doe" Hendrickson is a named party in this appeal, we will refer to Kevin and "Jane Doe" Hendrickson collectively as Hendrickson.

According to the Collins Short Plat, the Murphy Property is Lot 2, and the Hendrickson Property is Lot 4. The properties are not adjacent to each other.

The Collins Short Plat included an ingress, egress, and utilities easement running in a northwesterly direction from its southern terminus near North Dogwood Lane, a public street, and ending at what was then the western boundary of the Murphy Property. The Hendrickson Property's 1993 statutory warranty deed subjects its title to the easement "for the benefit of Lots 2 and 3." But it also grants to the Hendrickson Property an "ingress, egress and utilities" easement as described in the "Town of Woodway Short Plat." The Collins Short Plat describes the easement as "serving Lots 1, 2, 3 and 4."

A diagram of the lots is below. Lot 1 is outlined in blue; Lot 2 (the Murphy Property) is outlined in orange; Lot 3 is outlined in green, and Lot 4 (the Hendrickson Property) is outlined in yellow. The easement appears in purple.[2]

---

[2] This diagram, as submitted to the record, does not show the easement as it crosses over the Murphy Property. The multicolored lines have been added for clarity. Please note this is for illustrative purposes only.



The western portion of the easement crossed through the Murphy Property, as is diagramed below.[3]



---

[3] In the diagram, Lot 1 is referred to as Parcel A, and Lot 2 (the Murphy Property) is referred to as Parcel B. The dotted line shows the easement location as it crossed the Murphy Property.

In 1994, the owner of Lot 2 proposed relocating its property line 60 feet to the west. The "Proposed Property Line" as depicted in the diagram above became the official adjusted property line on July 27, 1994, per the approval of the Woodway Planning Commission. The easement language was not modified in any way at the time, and the diagram depicts the easement where it now dead-ends within the Murphy Property.

The Murphy Property is landlocked by Lots 1, 3, and 4. The easement serves as the only way by which the owner of Lot 2 (the Murphy Property) can access a public road. Lot 4 (the Hendrickson Property) has frontage directly onto North Dogwood Lane and is also serviced by the southern portion of the easement. The portion of the easement located on the Murphy Property does not provide ingress to, or egress from, the Hendrickson Property, to any public road.

Dennis Delahunt, the successor trustee of the Robert M. Ryan Living Trust, the then owner of the Murphy Property, commenced this action in May 2017, seeking to quiet title to the portion of the easement that crossed the Murphy Property.[4] The trial court granted the motion and quieted title in favor of Delahunt and the Trust.[5]

---

[4] The easement, as originally created, also benefitted the property north and east of the Hendrickson Property, known as Lot 3, but that owner released his interest in the portion of the easement crossing the Murphy Property because it serves no beneficial purpose to Lot 3. Thus, Hendrickson is the only person who claims a right of ingress and egress across the Murphy Property.

[5] Murphy purchased the property from the Trust in mid-2018 and became the Respondent in the present action. This court granted Respondent's motion to substitute Murphy for Delahunt on July 27, 2018.

## ANALYSIS

The sole issue on appeal is whether the trial court erred in quieting title to the western portion of the easement to the Murphy Property. We conclude no error occurred because the easement (1) dead-ends within the boundary of the Murphy Property and (2) serves no beneficial use to the Hendrickson Property.

### Standard of Review

This court reviews de novo a motion for summary judgment, engaging in the same inquiry as the trial court. Highline Sch. Dist. No. 401, v. Port of Seattle, 87 Wn.2d 6, 15, 548 P.2d 1085 (1976). "[S]ummary judgment is appropriate only where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Herskovits v. Grp. Health Co-op. of Puget Sound, 99 Wn.2d 609, 613, 664 P.2d 474 (1983). The reviewing court must draw all reasonable inferences in favor of the nonmoving party. Id.

### The Easement's Western Terminus

Hendrickson first contends there is a material issue of fact as to whether the easement dead-ends within the Murphy Property or terminates at the Murphy Property's western boundary with Lot 1. As originally platted in 1978, the easement terminated at the western boundary of Lot 2 (the Murphy Property), where it met the eastern boundary of Lot 1. The easement provided in relevant part:

> An easement for ingress, egress and utilities over, across and under a strip of land 30.00 feet in width having 15.00 feet on each side of the following described center-line: Commencing at a stone monument at the center of Section 26, Township 27 North, Range 3 East, H.M.; thence S 89°31'18" E along the east and west center-line of said section 699.595 feet {S 89°38'30" E 700.00 feet in previous

descriptions} to a monument; . . . thence S 84°03'04" N 138.25 feet, more or less, to an intersection with the east line of Lot 1 in the Priscilla Collins Short plat, said intersection being the terminus of the center-line of said easement for ingress, egress and utilities; the side-lines of said easement shall be lengthened or shortened in order to intersect the east line of said Lot 1 and the north line of said Lot 5A.

The survey attached to the easement shows the easement terminus at the boundary of Lot 1 and the Murphy Property (then known as Lot 2).

Hendrickson argues that when the boundary of the Murphy Property shifted west, the western terminus of the easement similarly extended to maintain an intersection with the eastern boundary of Lot 1. The rules of contract interpretation apply to interpretation of an easement. Pelly v. Panasyuk, 2 Wn. App. 2d 848, 864, 413 P.3d 619 (2018). The interpretation of an easement is a mixed question of law and fact. Id. What the original parties intended is a question of fact and the legal consequences of that intent is a question of law. Id. The intent of the original parties to an easement is determined from the deed as a whole. Sunnyside Valley Irrig. Dist. v. Dickie, 149 Wn.2d 873, 880, 73 P.3d 369 (2003). If the plain language is unambiguous, extrinsic evidence will not be considered. Id. An easement can be expanded over time only if the express terms of an easement manifest a clear intention by the original parties to modify the initial scope of the easement based on future demands. Id. at 884. But the face of the easement must manifest this clear intent. The "four corners" rule ensures subsequent purchasers have clear actual or constructive notice of the encumbrance based on future demands. Id.

Hendrickson's argument is inconsistent with the clear language of the easement itself and the legal requirement to follow metes and bounds[6] descriptions in the instrument creating the easement.

Here, the four corners of the easement identified the exact location of the metes and bounds of the easement's lines and terminus. From this description, a surveyor located the area covered by the easement without recourse to any other document. The survey documents show the easement now terminates within the Murphy Property. We are bound by this legal description. See Maier v. Giske, 154 Wn. App. 6, 16, 223 P.3d 1265 (2010) (when easement location is described by metes and bounds description, the precise land covered by easement can be ascertained without resort to extrinsic evidence); Kave v. McIntosh Ridge Primary Road Ass'n, 198 Wn. App. 812, 820, 394 P.3d 446 (2017) (trial court lacked authority to quiet title to easement in any location other than metes and bounds description in instrument creating easement).

There is nothing in the easement to indicate the original parties intended to lengthen the easement in the event the boundary of Lot 1 changed from where it was originally located. The phrase "the sidelines of said easement shall be lengthened or shortened" to intersect with Lot 1's eastern boundary does not evidence such an intent. The metes and bounds of the easement are based on a described "center-line." The language regarding the "sidelines" merely ensured the sidelines corresponded to the center line, which is defined with specific

---

[6] "Metes and bounds" are "[t]he territorial limits of real property as measured by distances and angles from designated landmarks and in relation to adjoining properties." BLACK'S LAW DICTIONARY 1012 (8th ed. 2004).

compass coordinates. Although the boundary line adjustment led to the loss of ingress or egress onto Lot 1, Hendrickson does not own Lot 1 and has no legal right to ingress into or egress from that parcel.

Because the easement does not contemplate any change in length, we conclude as a matter of law the easement's terminus remained at the old property boundary, which placed it inside the Murphy Property after the 1994 boundary line adjustment.[7] There are no issues of material fact as to the location of the easement's western terminus.

### Beneficial Use of the Easement to the Hendrickson Property

Hendrickson next claims that the easement onto the Murphy Property has future beneficial value to the Hendrickson Property because his currently undeveloped property might be able to use the easement for ingress or egress or for accessing utilities. He argues the trial court erred in concluding the easement has no beneficial use.

Hendrickson's argument, however, is foreclosed by our Supreme Court's holding in Coast Storage Co. v. Schwartz, 55 Wn.2d 848, 351 P.2d 520 (1960). As the Supreme Court held, "[a]n easement is a use interest, and to exist as an appurtenance to land, must serve some beneficial use." Id. at 853. An easement terminates as a matter of law when it serves no beneficial use to the dominant estate. Id. In Coast Storage, by virtue of several property transfers, the easement became a dead-end roadway in the middle of the plaintiff's property. Id. The Court

---

[7] Our conclusion is further supported by the fact that Lot 1 no longer needs the easement for access after a public road, identified as either Chinook Road or 117th Place in the two surveys in the record, was built along Lot 1's western border.

held that because the easement no longer lead to any public roadway and dead-ended on the plaintiffs' property, the defendants no longer had any beneficial use from the easement. Id. The Supreme Court affirmed the order quieting title of the easement to Coast Storage.

This case is analogous to Coast Storage. Like the easement in that case, the part of the easement running across the Murphy Property now dead-ends on that parcel. The dead-end easement leads to no public roadway, and thus, provides no ingress to or egress from the Hendrickson Property. Furthermore, there is no evidence that the easement onto the Murphy Property could ever be used by Hendrickson to access any utilities. To make it useful for utility installation, Hendrickson would either have to cross Lot 1 to reach a public roadway or gain access to Lot 1's utility easement on the western side of that lot. Hendrickson has no right to cross Lot 1, as the easement now ends on the Murphy Property. Under Coast Storage, there is no current or future beneficial use to be gained from the portion of the easement ending within the Murphy Property.

The trial court did not err in granting summary judgment and extinguishing the easement where it crossed the Murphy Property.

Affirmed.

WE CONCUR:

Andrus, J.

Chun, J.

Leach, J.