**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | | |
|---|---|---|
| MAX HURLBUT and HUEIH-HUEIH HURLBUT, in their individual capacities and as a marital community, | ) ) ) ) | No. 79758-1-I |
| Respondents, | ) ) | |
| v. | ) ) ) | DIVISION ONE |
| JAMES M. and JONI J. CRINES, in their individual capacities and as a marital community; STEVEN M. and KELLY L. WYNKOOP, in their individual capacities and as a marital community; BRADLEY J. KRANTZ and ELIZABETH A. DUNPHY, in their individual capacities and as a marital community; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a Delaware corporation, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | PUBLISHED OPINION |
| Appellants. | ) ) | |

MANN, C.J. — This is an easement dispute over an access easement to Lake Whatcom. The easement encumbers waterfront property owned by Max and Hueih-Hueih Hurlbut (collectively Hurlbuts). The easement provided lake access and benefitted upland properties owned by the Hurlbuts, James, and Joni Crines

(collectively Crineses), and Steven M. and Kelly L. Wynkoop, and Bradley J. Krantz and Elizabeth A. Dunphy (collectively Wynkoops).

The Hurlbuts sought quiet title to the easement claiming that the Crineses and Wynkoops violated the rules of the easement and failed to fully pay annual assessments. The Hurlbuts and Wynkoops settled, with the Wynkoops giving up their easement right. After a bench trial, the trial court determined that the easement included a termination provision, but it found that the Crineses had not materially violated the terms. The trial court also ordered the Crineses to reimburse the Hurlbuts for maintenance expenses and for a portion of the Hurlbuts' insurance premiums.

The Crineses appeal and contend that the trial court erred in concluding that the easement included a termination provision and erred in ordering that the Crineses reimburse the Hurlbuts for past maintenance expenses. We agree with the Crineses and reverse those portions of the trial court's decision.

The Hurlbuts cross appeal contending that the trial court erred in concluding: (1) that the Crineses did not substantially violate the easement and thereby justify termination of the easement; (2) in failing to enforce the unwritten agreement making the Crineses solely responsible for maintenance costs for 10 years; (3) that the attorney fees incurred by the Hurlbuts to challenge the Wynkoops' actions were not a shared costs; (4) that the Crineses were only responsible for a 1/11th share of the liability insurance obtained by the Hurlbuts; and (5) that the Crineses' base cost sharing remained 4/11ths instead of 4/8ths after the Wynkoops gave up their interest in the easement. We disagree with the Hurlbuts' contentions and affirm the trial court's relevant conclusions. We also reverse the trial court's order requiring the Crineses to

pay 1/11th of the Hurlbuts' insurance premium because it was outside the scope of the easement.

## FACTS

Brothers Kim Hurlbut and Max Hurlbut[1] owned 11 lots, comprising 3 parcels, upland and separated from Lake Whatcom by Lake Whatcom Boulevard. Kim and Hurlbut also owned the lakefront parcel directly across from the 11 lots (lakefront property). In 2002, Kim and Hurlbut executed and recorded an easement agreement, creating an easement that benefitted the three upland parcels by providing access to Lake Whatcom through the lakefront property.

In 2004, the Hurlbuts sold one of the four-lot upland parcels to the Crineses (Crineses' property) and a three-lot upland parcel to the Wynkoops. The Hurlbuts retained a four-lot parcel for themselves (Hurlbut property). The Crineses and Hurlbuts have single family residences on their parcels. The Wynkoops property is a vacant lot.

The Crineses purchased their property, in part, because of the easement providing lake access over the lakefront property. Over the years, the Hurlbuts adopted various rules for the owners' use of the lakefront property. At first, the owners were cooperative, but eventually the Hurlbuts claimed that the Wynkoops became "bad actors and even worse neighbors." The Crineses, however, did not materially violate any of the rules of the easement.

From 2004, when the Crineses purchased their property, until 2013, Hurlbut personally performed all of the maintenance work on the lakefront property without

---

[1] Max Hurlbut will be referred to as Hurlbut, while his brother Kim Hurlbut, who is a nonparty, will be referred to as Kim. No disrespect is intended.

charge to the benefitting properties under the easement. In various writings over the years, Hurlbut stated to the Crineses and the Wynkoops that he was performing maintenance for a time without charge and, eventually, he would be unable to perform the maintenance personally. As the Crineses and the Wynkoops paid nothing for maintenance, Hurlbut expected that they would be responsible for the maintenance and any associated expense for a similar time when he could no longer complete the work himself. This expectation was neither put into writing, nor signed by the Crineses or the Wynkoops. Even so, the Crineses and the Wynkoops did not pay any maintenance costs associated with the lakefront property for 10 years. The Crineses were aware of the Hurlbuts' expectation and did not object or otherwise respond to the Hurlbuts' communications.

The easement provides that the grantor may assess the grantees on a pro rata share basis, all expenses associated with maintenance, taxes, and repair of the lakefront property. The Hurlbuts issued assessments at the end of the year to the Wynkoops and the Crineses, based on the proportionate lots they each owned. In 2012, the Hurlbuts added an umbrella policy to their homeowner's insurance for the lakefront property out of concern over the Wynkoops' use, which included inviting people to swim and use a jet ski from the lakefront property dock. The Hurlbuts included a proportionate share of the cost of the policy in the annual assessment for 2012.

The Crineses paid all assessments issued by the Hurlbuts until the 2013 assessment. In the 2013 assessment, the Hurlbuts assigned a total assessment to the Crineses of $616.24 for the maintenance, liability insurance coverage, and real estate

taxes.  The Hurlbuts allocated 4/7ths of the total maintenance costs to the Crineses, 3/7ths of the maintenance costs to the Wynkoops, and none to themselves.  The Crineses objected to the increased allocation for maintenance costs and the assessment for the liability insurance.  The Crineses tendered a check for $274.83 to the Hurlbuts.  The Hurlbuts returned the check.

In November 2014, the Hurlbuts issued the Crineses an assessment for maintenance, liability insurance, and attorney fees, totaling $ 3,082.92.  The assessment included a share of $4,056.25 in attorney fees that the Hurlbuts incurred challenging the Wynkoops' attempt to build a parking lot on the Wynkoops' property.  The Crineses did not pay the assessment.

In late January 2015, the Hurlbuts notified the Crineses and the Wynkoops by letter that they were terminating the easement.  On February 10, 2015, the Hurlbuts filed a complaint in superior court seeking declaratory relief that the easement was terminated and to quiet title the lakefront property.  In December 2015, the Hurlbuts settled all claims here against Wynkoops.  The settlement included the Wynkoops' execution of a quitclaim deed to the Hurlbuts of all interest they held in the lakefront property and easement.

After a bench trial, on March 8, 2019, the trial court entered extensive findings of facts and conclusions of law.  The trial court reformed the easement, striking a requirement that owners must unanimously agree to the yearly assessments.  The court also concluded that the easement could be extinguished for failure to follow its terms and conditions, including failure to pay annual assessments.  But the trial court determined that there was a reasonable dispute related to the annual assessments that

justified the Crineses' nonpayment, and that the Crineses did not violate the rules of using the easement. As a result, it concluded the Crineses did not substantially violate the terms of the easement and extinguishing their interest would be inequitable. The court also concluded that in a quasi-contract, the Crineses should pay 6/11th of the maintenance costs from 2013 until 2022, even though there was no written modification to the easement. Under this ruling, the court ordered the Crineses must reimburse 1/11th of the Hurlbuts' liability insurance, 6/11th of the landscaping and maintenance expenses, and 4/11th of the property taxes from 2013 until 2017. Going forward, the trial court held that the Hurlbuts could set policy and coverage limits for liability insurance and

> then either allow the Crines to purchase their own insurance consistent with those parameters and name Hurlbut as a third-party insured, or Hurlbut can insure the Easement property and name the Crines as third-party insureds, and then expect 4/11ths of the cost of that insurance premium to be paid by the Crines.

The court also concluded that Hurlbut could not assess the Crineses any portion of the attorney fees he spent disputing whether the Wynkoops could build a parking lot on their property and litigating his quiet title action against them. Finally, the court found that, although there was a provision for attorney fees in the easement, both parties prevailed on substantial issues, and decided neither the Crineses, nor the Hurlbuts were entitled to attorney fees.

The Crineses appeal. The Hurlbuts cross appeal.

DISCUSSION

We review a trial court's conclusions of law de novo. Robel v. Roundup Corp., 148 Wn.2d 35, 60, 59 P.3d 611 (2002). We review a trial court's findings of fact for substantial evidence. Nejin v. City of Seattle, 40 Wn. App. 414, 418, 698 P.2d 615 (1985). "Furthermore, mixed questions of law and fact are subject to review despite a party's failure to assign error to the finding." Robel, 148 Wn.2d at 60. "A trial court's findings of fact that are supported by substantial evidence will not be disturbed on appeal." Nejin, 40 Wn. App. at 418. "Where the findings are supported by substantial evidence, the question is whether they support the conclusions of law." Nejin, 40 Wn. App. at 418-19.

A. Crineses' Appeal

The Crineses contend that the trial court erred in concluding that the easement is terminable and that they are responsible for 6/11th of the maintenance for the lake property from 2013 through 2022. We address each argument in turn.

1. Is the Easement Extinguishable?

The Crineses first argue that the trial court erred in concluding that the easement can be extinguished for failing to follow its terms and conditions, including failure to pay annual assessments. We agree.

The rules of contract interpretation apply to the interpretation of an easement. Hendrickson v. Murphy, 8 Wn. App. 2d 150, 156, 437 P.3d 736 (2019). The interpretation of an easement is a mixed question of law and fact. Sunnyside Valley Irr. Dist. v. Dickie, 149 Wn.2d 873, 880, 73 P.3d 369 (2003). "What the original parties intended is a question of fact and the legal consequence of that intent is a question of

law." Sunnyside, 149 Wn.2d at 880. "The intent of the original parties to an easement

is determined from the deed as a whole." Sunnyside, 149 Wn.2d at 880. "If the plain

language is unambiguous, extrinsic evidence will not be considered." Sunnyside, 149

Wn.2d at 880. "If ambiguity exists, extrinsic evidence is allowed to show the intentions

of the original parties, the circumstances of the property when the easement was

conveyed, and the practical interpretation given the parties' prior conduct or

admissions." Sunnyside, 149 Wn.2d at 880.

While the trial court ultimately concluded that the Crineses did not act in a

manner that substantially violated the easement, the court did conclude that the

easement could be extinguished if, after trial, a court concludes that lack of performance

or a violation merited termination. The trial court explained:

> The Easement can be extinguished as to the Crines for failure to
> follow the terms and conditions of the Easement, including the failure to
> pay regular annual assessments that are due. However, this could not be
> done unilaterally by Hurlbut because there is no mechanism in the
> Easement for doing so, and the Crines have a property interest in the
> Easement that they paid good consideration. Without a mechanism that
> permits unilateral action in the Easement itself, a trial is necessary to find
> facts and then conclude that a lack of performance or a violation of terms
> and conditions merited extinguishing the Easement.

The parties do not dispute that the easement does not have an express

termination clause. Instead, the trial court based its conclusion on paragraph 2 of the

easement which provides:

> 2. Grant of Easement. Grantors grant the current and future owners or
> tenants of Grantees Property ("Owner"), the right to use Grantors Property
> and associated Amenities. It is the intent of the parties that the easement
> granted herein and hereby be conditioned upon the Owners paying their
> fair share of the costs of maintaining the Amenities and the Owners or
> tenants of the Owners obeying all the generally applicable rules of use of
> the Amenities, as defined herein and from time to time amended by the

owners of Grantors Property.  In consideration of which, the current and future Owners or tenants of Owners shall have the same rights to use the Amenities as any owners or tenants of Grantors Property, subject, of course, to the terms and conditions set forth herein.[2]

The Hurlbuts argue, and the trial court agreed, that the language "conditioned upon" in paragraph 2 is equivalent to a termination clause.  We disagree.  The easement does not provide for termination if the grantee fails to pay their annual assessment.  Instead, the easement provides that delinquent assessments become a lien against the property:

> 3.1 <u>Lien/Personal Obligation</u>.  Annual and special assessments, together with interest, costs and reasonable attorney's fees, shall be a personal obligation of each Owner at the time when the assessment is due.  Delinquent assessments, together with interest (12% per annum), costs, and reasonable attorneys' fees, <u>shall become a lien upon the Owner's property if Grantors file[s] a Claim of Lien with the Whatcom County Auditor</u>.  The property of such lien shall be based upon the date the Claim of Lien is filed.[3]

The mechanism for enforcing any such lien is addressed in the easement:

> 3.10 <u>Lien Indebtedness</u>.  All assessments shall be joint and several personal debts and obligations of each Owner or Owners for which the same are assessed as of the time the assessment is made, and shall be collectible as such.  The amount of any assessment, whether regular or special, assessed to any Owner, plus interest, and costs including reasonable attorney fees, shall be a lien upon such Owner's property.  Suit to recover a money judgment for unpaid assessments shall be maintainable by the Grantors without foreclosure or waiving the lien securing the debt.  The Grantors may bring an action at law against another Owner personally obligated to pay the same, or foreclose any lien against the subject property in the same manner as an action to non-judicially foreclose a deed of trust on real property.  From the time of commencement of such action, the delinquent Owner shall pay all costs, interest, and fees incurred in the foreclosure action, where it proceeds to judgment or is resolved earlier.

---

[2] (Emphasis added.)
[3] (Emphasis added.)

The easement also does not provide for termination based on a failure to follow applicable rules. Instead, the easement provides an express remedy for breach of any of the covenants or agreements, including injunctive relief:

> 11. <u>Remedies</u>. In the event of a breach of any of the covenants or agreements set forth in this Easement, the parties hereto shall be entitled to any and all remedies available at law or in equity, including, but not limited to the equitable remedies of specific performance or mandatory or prohibitory injunction issued by a court of appropriate jurisdiction.

"Termination of easements is disfavored under the law." <u>City of Edmonds v. Williams</u>, 54 Wn. App. 632, 636, 774 P.2d 1241 (1989). Because the easement does not provide for the remedy of termination—and instead provides remedies for both the failure to pay annual assessment and for a violation of the rules—the trial court erred in concluding that the easement can be terminated for a violation on one of the conditions in paragraph 2.

2. <u>Maintenance Costs</u>

Next, the Crineses contend that the trial court erred in concluding that they are responsible for 6/11ths of the maintenance for the lakefront property from 2013 through 2022. We agree.

The court concluded that the Crineses should be responsible for 6/11ths of the maintenance expense because the Hurlbuts provided the maintenance for the Hurlbuts' Lakefront Property for a time period at no cost to the Crineses and the Wynkoops. In turn, the court concluded that it would be unfair to the Hurlbuts if the Crineses and Wynkoops did not have to pay a greater share of the maintenance expenses for a similar time period.

The court found:

19. Since Crines' acquisition of the Crines Property and until 2013, M. Hurlbut performed in good faith all maintenance work to the Hurlbut Lakefront Property personally, and without charge to the benefitting properties under the Easement. In various writings over the years, M. Hurlbut stated to the Crines and Wynkoops that he was performing maintenance for a period of time without charge and that he expected at some points to become unable to perform them personally. As Crines and Wynkoops paid nothing for maintenance for a period of time, M. Hurlbut expected that they would pay all of the maintenance costs for a similar period of time after he was unable to continue to do such work, but this exception was not put into writing and signed by the Crines and/or the Wynkoops.

20. Nonetheless, Crines did not have to pay maintenance costs for ten years, and this was a benefit to them, and M. Hurlbut notified them of his expectation and understanding that the parties had an agreement that the other owners would be responsible to solely pay for maintenance costs for a comparable amount of time that he provided such work for free. The Crines were aware of M. Hurlbut's expectation and belief, and never objected or otherwise responded to his communication on this issue. M. Hurlbut performed the maintenance work for the benefit of all Owners in reliance that the other Owners (including the Crines) would pay all maintenance costs for an equal period of time. Such reliance was reasonable and to Hurlbut's detriment.

21. The Crines would be unjustly enriched if they are not obligated to pay an additional obligation towards maintenance costs for the same number of years that M. Hurlbut provided such services for free to all of the Owners.

The court concluded:

Despite the requirement in the Easement for written amendments, the Court concludes that failure to address these circumstances would work [an] inequity and also concludes that quasi contract is appropriate. If the Wynkoops' right under the Easement had not been terminated, then the split of Hurlbut's 4/11th share of maintenance costs could have been split evenly between the Crines and Wynkoops with each absorbing an increase of 2/11ths. The Crines could have therefore paid 6/11ths of the cost, and the Wynkoops would have paid 5/11ths of the cost. Because the Crines had no control over termination of the Wynkoops' Easement rights, the Court concludes that in quasi contract, the Crines must pay 6/11ths of the cost of the maintenance reasonably incurred and accounted for by the Owner of the Hurlbut Lakefront Property between 2013 through

2022.  Thereafter, the Crines portion of these regular maintenance assessments will revert to 4/11ths.

The trial court erred in concluding the Crineses agreed, through their silence, to modify the easement.  The easement is a recorded document and not subject to oral modification.  The easement prohibits oral modification: "any additions, variation, or modification to this Easement shall be void and ineffective unless in writing and signed by the parties hereto or their successors in interest."  All parties were on notice of the terms of the easement that oral modifications were void.

Further,

> RCW 64.04.010 provides that every conveyance of real estate, or any interest therein, and every contract creating or evidencing any encumbrance upon real estate, shall be by deed; and RCW 64.04.020 requires that every deed shall be in writing, signed by the party bound thereby, and acknowledged before a person authorized by statute to take acknowledgments of deeds.

Perrin v. Derbyshire Scenic Acres Water Corp., 63 Wn.2d 716, 719, 388 P.2d 949 (1964).

The Hurlbuts have no right to recover under a theory of implied or a quasi-contract.  "A party to a valid express contract is bound by the provisions of that contract, and may not disregard the same and bring an action on an implied contract relating to the same matter, in contravention of the express contract."  Chandler v. Washington Toll Bridge Authority, 17 Wn.2d 591, 604, 137 P.2d 97 (1943).  Further, "[t]he courts will not allow a claim for unjust enrichment in contravention of a provision in a valid express contract."  MacDonald v. Hayner, 43 Wn. App. 81, 86, 715 P.2d 519 (1986).

The easement apportions to the Crineses 4/11ths of the property taxes and maintenance costs. The trial court erred by modifying the express written terms of the easement.

### B. Hurlbuts' Cross Appeal

The Hurlbuts cross appeal and contend that the trial court erred in concluding: (1) that the Crineses did not substantially violate the easement and thereby justify termination of the easement; (2) in failing to enforce the unwritten agreement making the Crineses solely responsible for maintenance costs for 10 years; (3) that the attorney fees incurred by the Hurlbuts to challenge the Wynkoops' actions were not a shared costs; (4) that the Crineses were only responsible for a 1/11th share of the liability insurance obtained by the Hurlbuts; and (5) that the Crineses' base cost sharing remained 4/11ths instead of 4/8ths after the Wynkoops gave up their interest in the easement. Because of our conclusions that the easement was not extinguishable and not subject to oral modification, we do not address the Hurlbuts' first two contentions.

#### 1. Attorney Fees for Challenging Wynkoops

The Hurlbuts contend that the court erred when it concluded that they could not recover from the Crineses a portion of the fees incurred in challenging the Wynkoops' attempt to build a parking lot on their property, and the later action to terminate the easement on the Wynkoops' Property. We disagree.

First, under the easement, the annual assessment includes "legal action to protect Grantors Property and Amenities." The "grantors' property" is defined in the easement as the lakefront parcel on Lake Whatcom. Thus, as grantors, the Hurlbuts may recover attorney fees necessary to protect the lakefront parcel. The Hurlbuts may

-13-

not, however, collect attorney fees for litigation with the Wynkoops over the Wynkoops' efforts to build a parking lot on their upland property. The Crineses were not involved in the Hurlbuts' dispute with the Wynkoops and the litigation was not over protecting the lakefront parcel.

Nor are the Crineses responsible for the attorney fees incurred in the Hurlbuts' action seeking to terminate the easement against the Wynkoops. The easement provides that the prevailing party in litigation for breach of any covenant or agreement "shall be entitled to be reimbursed for all costs and expenses incurred or expended in connection therewith, including, but not limited to, reasonable attorneys' fees (including appellate fees) and court costs." Thus, any fees that the Hurlbuts incurred in litigation against the Wynkoops were recoverable against the Wynkoops.

The trial court did not err in concluding that the Crineses were not responsible for the attorney fees incurred in the Hurlbuts' actions against the Wynkoops.

2. Share of Expenses

The Hurlbuts contends that, if the court affirms, it should reverse the trial court's use of 11 lots to divide the expenses because the grantor's property is no longer encumbered by the Wynkoops' 3 lots and instead, this court should divide the expenses by 8 lots. We disagree.

The trial court correctly concluded that, under the easement, the Crineses have a right to use the Hurlbut Lakefront Property 4/11ths of the total time. After the Wynkoops released their interest in the easement, the Hurlbuts may use the property for the remaining time, or 7/11ths of the total time. It would therefore be inconsistent with the property rights enumerated in the easement and the time allocated between Hurlbut and

-14-

the Crineses to require the Crineses to pay 4/8ths of the expenses, but only allow them to use the Hurlbut Lakefront Property 4/11ths of the time. We decline to modify the terms of the easement to divide expenses between eight lots.

3. Insurance Premiums

Hurlbut contends that the trial court erred when it ordered the Crineses to pay only 1/11ths of the insurance premiums for the Hurlbut Lakefront Property. We agree that the trial court erred, but for a different reason. We conclude the trial court erred in ordering the Crineses to pay any portion of the Hurlbuts' liability insurance.

Under the express terms of the easement, the annual assessment "shall be used to administer and carry out the maintenance of the Grantors' Property and associated Amenities, including but not limited to property taxes, maintenance, clean up, repairs, legal action to protect Grantors Property and Amenities, and the like." Liability insurance is not addressed in the express terms of the easement.

Instead, potential liability for use of the easement is addressed by an indemnification clause:

> 6. Release and Indemnification. Each party ("Indemnitor") does hereby release, indemnify and promise to defend and save the other party ("Indemnitee") harmless from and against any and all liability, loss, damage, expense, actions and claims, including costs and reasonable attorneys' fees incurred by the Indemnitee in defense thereof, asserted or arising directly or indirectly on account of injury to persons or damage or property occurring on or to the Amenities, the Grantors Property, or the Grantees Property by the Indemnitor; provided, however, that this paragraph does not purport to indemnify the Indemnitee against liability for damages arising out of bodily injury to persons or damage to property to the extent caused by or resulting from the negligence of the Indemnitee and/or Indemnitee's agent or employees.

-15-

This indemnification manages the risk between the parties. Further, the trial court found that the "Crines maintained an insurance policy covering their use of the Hurlbut Lakefront Property." Thus, it was an error for the trial court to order the Crineses to reimburse the Hurlbuts for past insurance premiums.

We reverse the trial court's order that the Crineses to pay 1/11ths of the Hurlbuts' insurance premiums. Going forward, both parties may maintain their own insurance policies on the Hurlbut Lakefront Property, unless the parties agree otherwise in writing.

## C. Attorney Fees

Both parties assign error to the trial court's determination that each substantially prevailed and therefore, each should pay their own attorney fees. Both parties request attorney fees on appeal as the prevailing party.

The easement allows an award of attorney fees to the prevailing party and specifically includes appellate fees. The Crineses have prevailed on their appeal and thus were the prevailing party below and on appeal.

Since the Crineses prevailed at trial and on appeal, the award of attorney fees and costs is reversed and remanded for further proceedings. The trial court is also tasked on remand to determine an appropriate award of attorney fees on appeal, as it is in the best position to safeguard against the risk of duplication or double recovery. RAP 18.1(i) ("[t]he appellate court may direct that the amount of fees and expenses be determined by the trial court after remand").

Reversed and remanded for modification of the findings and conclusions consistent with this opinion, and an award of attorney fees below and on appeal to the Crineses.

_Mann, C.J._

WE CONCUR:

_Andrus, A.C.J._          _Dwyer, J._